(No. 24497.—
THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* HARRY FILAS, Plaintiff in Error.

*Opinion filed April 15, 1938—Rehearing denied June 8, 1938.*

WM. SCOTT STEWART, for plaintiff in error, on review.

OTTO KERNER, Attorney General, THOMAS J. COURTNEY, State's Attorney, and A. B. DENNIS, (EDWARD E. WILSON, JOHN T. GALLAGHER, MELVIN S. REMBE, and BLAIR L. VARNES, of counsel,) for the People.

Mr. JUSTICE WILSON delivered the opinion of the court:

This writ of error was sued out to review the verdict of the jury and judgment of the criminal court of Cook county, finding the defendant guilty of robbery while armed with a pistol and of being an habitual criminal, and sentencing him to life imprisonment.

The Standard Oil Company owned the filling station located at the corner of West Garfield boulevard and Racine avenue in the city of Chicago. On December 15, 1935, about the hour of 6:45 o'clock in the evening, two men, armed with revolvers, appeared at the filling station and ordered Pedersen and Voels, the two attendants at the filling station, into a wash room and took from Pederson $37, the property of the Standard Oil Company. Both Pedersen and Voels, the attendants, identified the defendant, Filas, as the man who committed the robbery. Pedersen testified that he was able to observe the defendant at the filling station for about a minute before they were compelled to enter the wash room. Pedersen testified that this same defendant appeared at the filling station on the nights of October 6, 15, and November 27, in the year 1935, and that on each of these occasions the defendant held up the filling station and the witness had an opportunity on these various occasions of seeing and observing him for a period of several minutes. Objection was made to this testimony but it was competent for the purpose of qualifying the witness as to his opportunities of seeing and observing the defendant and thereby

strengthening his identification. The defendant was arrested and at a show-up at the police station, in which the defendant was one of three men, he was identified by Pedersen.

Raymond Voels, the other attendant at the filling station, corroborated the testimony of Pedersen as to the time and circumstances of the robbery on December 15, 1935, and testified that at that time he saw the defendant for about two minutes. He also testified that he saw the defendant on October 6, 1935, for four or five minutes. He identified the defendant from among three men at a show-up on March 31, 1936, at the Chicago Lawn police station.

On behalf of the defendant, one Dr. Frank Sender testified that he attended the defendant as a patient at the home of the latter's mother on December 14, 15 and 16, 1935. On the last named date the doctor called at about 6:30 o'clock, P. M. and found the defendant in bed. The doctor treated the defendant for acute streptococci sore throat, similar to "a grippe." He filled no prescription for the defendant but left some medicine for him, taken from the doctor's medicine kit. He testified that previously he had treated the defendant's mother. The doctor testified that he kept a memorandum book of the patients on whom he called and that he had a notation therein of the calls made on the defendant, but not of the calls made on the defendant's mother; that he made a note of some calls on cards in a card-index system. The doctor also testified that for a part of 1935 he used another book, but after a time returned to the use of the one exhibited in court.

One Joseph Delohery testified that he was the man in the wash room on October 6, 1935, when the attendants were ordered into that room, and that the defendant was not the man who robbed the filling station at that time. The witness had been interviewed about six weeks previous to the trial by an uncle of the defendant. The residence of the witness is several miles from the filling station, and it was not shown how he happened to be at the station.

Arthur Mayes, engaged in the garage business on the south side in Chicago, testified that on December 14, 1935, Mrs. Filas' daughter brought an automobile to his garage for repair. The next day the witness stopped at the Filas' home about 6:30 o'clock P. M. and talked to Mrs. Filas and visited for about half an hour with the defendant who was in bed. The witness testified that he had known the Filas family for about a year and the defendant "is more or less of a friend of mine."

Mrs. Millie Filas, the defendant's mother, testified that she went to the defendant's place of employment to ascertain the time her son worked there at about the time of the robbery, and that she also saw Dr. Sender with reference to the time the doctor attended her son. She testified that her son, the defendant, was sick from December 14 to 17, inclusive, and was in bed between 6:00 and 7:00 o'clock on the night of December 15, 1935.

From the testimony it appears that it was about two and one-half miles from Garfield boulevard (Fifty-fifth street) and Racine avenue, the place of the robbery, to Seventy-sixth street and Racine avenue, the place of the defendant's employment, and that by automobile it would take eleven minutes to go that distance and by street car about fifteen minutes.

Several errors are urged which, it is contended, in view of the testimony in the case, were prejudicial. It is also argued that the judgment should be reversed on the evidence. It is contended that even though proof of other offenses was admissible, (as we hold it was on the question of identity,) the details of such crimes should not have been admitted. On the direct examination of one of the witnesses the manner in which the attendants were ordered into the wash room was stated. This testimony did not prejudice the defendant. On the cross-examination there were many further details elicited by the defendant's attorney which would accentuate the commission of the previous

crimes in the minds of the jury to a much greater extent than the testimony that the attendants were ordered into the wash room. There were only sufficient details on the direct examination of the witnesses testifying to the previous robberies to show the opportunity for identifying the person or persons committing them.

It is contended that certain cross-examination of one of the People's witnesses was too restricted. An objection related to a question which was ambiguous and for that reason it was sustained. There was nothing to prevent the defendant's attorney from asking other competent questions relating to the same matter.

It is contended that the court erred in sustaining an objection and remarking that the evidence objected to had nothing to do with the case. The question was collateral to the issue and the defendant was not prejudiced by the ruling of the court.

Error is predicated on the fact that the court, of its own motion, asked several questions of a witness while on the stand. We see nothing improper in the questions or the manner in which they were propounded by the court. While it is true the court should not convey an impression to the jury by its questions, nevertheless it has considerable latitude in questioning witnesses. (*People* v. *Limeberry,* 298 Ill. 355.) The defendant was not prejudiced by the court's ruling.

There was no error in the manner of identifying the defendant. (*People* v. *Schmidt,* 364 Ill. 313; *People* v. *Kriner,* 362 id. 292; *People* v. *Reilly,* 348 id. 153.) We do not find that there were any prejudicial errors committed on the trial. The defense was an alibi. The testimony of the attendants at the filling station was direct and positive that the defendant was one of the men committing the robbery. They observed the defendant at close range and in a good light. Their opportunity for the identification was ample. They had seen the defendant on previous occasions

for considerable lengths of time, and it cannot be held that their opportunities for identification were insufficient or unsatisfactory. The case is unlike that of *People* v. *De Suno,* 354 Ill. 387, cited by counsel for the defendant. In that case we held that the testimony of the witnesses identifying the defendant was not of the most conclusive character, but the judgment was reversed and the cause remanded for others errors occurring at the trial. The question of identification on such evidence as was here presented was for the jury to determine. (*People* v. *Kelley,* 367 Ill. 318; *People* v. *Manfucci,* 359 id. 69.) Where the defense is an alibi, and the evidence is conflicting, the truthfulness of the witnesses and the weight of their testimony rest primarily with the jury. (*People* v. *Deal,* 361 Ill. 225; *People* v. *Schmidt, supra.*) Alibi is an affirmative defense and the burden of establishing it is on the defendant. (*People* v. *Deal, supra.*) When no prejudicial error of law appears in the record, this court will not disturb a judgment of conviction where the verdict is not palpably contrary to the weight of the evidence, or the evidence is not so unreasonable, improbable or unsatisfactory as to justify a reasonable doubt of the defendant's guilt. *People* v. *Hicks,* 362 Ill. 238; *People* v. *Oliff,* 361 id. 237.

The brief presented on behalf of the defendant has mingled a discussion of the facts and law in two cases involving different crimes charged to have been committed by the defendant, but in no way related to each other. We have confined our discussion to the facts presented in this case. Proof was made that the defendant is an habitual criminal. There is no reversible error in the record and the proof was ample on which to rest the defendant's conviction.

The judgment of the criminal court is affirmed.

*Judgment affirmed.*