Wilbur L. Martin, Appellee, v. John C. Blackburn et al., Defendants, Rodkin's Inc., Appellant.

Gen. No. 41,754.

Heard in the third division of this court for the first district at the June term, 1941. Opinion filed January 7, 1942. Rehearing denied January 28, 1942.

LORD, BISSELL & KADYK, of Chicago, for appellant; BRUCE S. PARKHILL, of Chicago, of counsel.

GARDNER, CARTON & DOUGLAS, of Chicago, for appellee; ERWIN W. ROEMER, DONALD P. McFADYEN and WILLIAM L. FAY, all of Chicago, of counsel.

MR. JUSTICE HEBEL delivered the opinion of the court.

The plaintiff instituted this action at law against defendants to recover damages for personal injuries alleged to have been sustained by plaintiff as a result of the alleged intoxication of the defendant, John C. Blackburn. Blackburn was sued for assault, he was together with the other defendants joined under the Illinois Dram Shop Act.

Defendants, Morris Rodkin and Rodkin's Inc., were joined as parties defendant on the theory that intoxicants sold to Blackburn in a tavern cafe operated by them contributed to his alleged intoxication. Defend-

ants, William M. Crest and John A. Moir, trustees, and John Moir, were joined as parties defendant as the owners of the premises operated by the defendants, Rodkin's Inc., and Morris Rodkin as a tavern cafe. Defendants, Crest and Moir, trustees, and John Moir, were not served with process and were dismissed.

At the close of the plaintiff's case and on motion of plaintiff the trial court dismissed the action as to Morris Rodkin, individually. The trial court also denied the motion of defendant, Rodkin's Inc., made at the close of plaintiff's case, to instruct the jury to find the defendant, Rodkin's Inc., not guilty; and denied a similar motion by said defendant made at the close of all the evidence. The jury returned a verdict finding the defendant John C. Blackburn guilty and assessing the plaintiff's damages at the sum of $1,250, and a separate verdict finding the defendant Rodkin's Inc., guilty and assessing plaintiff's damages in the sum of $5,250. The trial court entered judgments for such amounts and costs on the respective verdicts. Thereafter, by agreement of counsel for plaintiff and defendant Blackburn, the judgment entered on the verdict of the jury against Blackburn was vacated and set aside by the court and the case dismissed as to defendant Blackburn, to which the defendant Rodkins, Inc., duly excepted. Thereafter, the defendant Rodkin's, Inc., filed its written motions for judgment notwithstanding the verdict, for a new trial and in arrest of judgment. These motions were denied by the court. It is from the rulings of the trial court entering judgment on the verdicts and denying said motions that defendant Rodkin's, Inc., appeals.

From the pleadings in this case it appears that Count I, as amended, alleges in substance that on December 22, 1939, the defendants William M. Crest and John A. Moir, trustees, and John Moir, were the owners of the building and premises known as 333 N. Wells street, Chicago, Illinois; that sec. 135, ch. 43 of

Ill. Rev. Stat. 1939 [Jones Ill. Stats. Ann. 68.042], was in full force and effect; that defendants Morris Rodkin and Rodkin's Inc., a corporation, operated a tavern and restaurant therein known as the Morris Rodkin Restaurant, and on said date sold intoxicants to defendant John C. Blackburn, causing him to become intoxicated; that as a consequence of said intoxication he committed an assault upon the plaintiff, Wilbur L. Martin, with a butcher knife, injuring the plaintiff's hand, fingers and arm, for which he demands judgment against all said defendants in the amount of $25,000. Count II alleges that on December 22, 1939, the defendant John C. Blackburn committed an assault upon the plaintiff with a butcher knife, injuring plaintiff's fingers, hand and arm, for which he demands damages from said defendant Blackburn in the sum of $25,000.

Defendants, Morris Rodkin and Rodkin's, Inc., filed an answer to this amended complaint in which the defendant Rodkin's, Inc., admitted the operation of the restaurant and tavern, but the defendant Morris Rodkin denied it; and admitted the existence of the statute in question, but denied all other material allegations.

From the facts it appears that the defendant Rodkin's, Inc. is a corporation, and owns and operates the restaurant and tavern at 333 N. Wells street, Chicago, known as the Morris Rodkin Restaurant. The facts as they appear from the evidence of witnesses are that during the afternoon of December 22, 1939, the defendant, John C. Blackburn, attended a drinking, "preholiday" party at the plant of his employer, the Thomas J. Webb Company, 416 W. Ontario street, Chicago. The party was held by several employees of the company, it being a mutual affair—the persons attending furnishing the refreshments. Defendant Blackburn stayed there about an hour and forty-five minutes and consumed four or five bourbon whiskey highballs, to which he helped himself. Blackburn left

this party in a car owned and driven by one Grant Emerson Blalock and went to the restaurant and tavern owned and operated by defendant, Rodkin's, Inc., arriving there at about 7:30 or 7:45 in the evening There he met or was joined by Melvin Anderson and Blalock, and while these three men were together at Rodkin's restaurant and tavern they each had four to six drinks of bourbon whiskey. After being in the tavern about 45 minutes, they left, Anderson and Blalock separating from Blackburn.

When Blackburn was leaving, the rear bumper of his automobile caught on the front bumper of an automobile owned by Reynold Koeppen. Blackburn was unaware of this, it appears, due undoubtedly to the fact that the street was down grade. The cars became disengaged when Blackburn had traveled about 75 feet and was making the turn on Kinzie street. Koeppen's car, a Willys, had enough momentum to carry it into a parked Plymouth car owned by a Miss Peggy Thomas. The resultant damage to the Plymouth car amounted to a caved-in door and a slightly damaged running board and fender, for which damage Blackburn paid the sum of $35 in satisfaction.

After this accident Blackburn parked his car near the Plymouth and walked back to Rodkin's restaurant, where he inquired in a loud voice ''Who owns the Willys car?'' Someone came up to Blackburn and made some inquiry as to what he was yelling about and struck him in the face. Morris Rodkin also came up to Blackburn and took him by the shoulders. The attention Blackburn received was due solely to the loud voice used when he inquired as to the ownership of the Willys car.

The plaintiff Martin arrived at Rodkin's, Inc. sometime between seven and eight o'clock. He knew Reynold Koeppen, who was sitting in a booth, so, while waiting for one Murray, he sat with Koeppen. Koeppen owned a Willys car, and when he and plaintiff

heard Blackburn in the front of the restaurant inquiring about the Willys car they both looked up and saw Blackburn holding his jaw. Koeppen and plaintiff went to the front part of the restaurant, and there Blackburn, who was unknown to them both, explained about the accident. All three men went to the corner of Wells and Kinzie, Blackburn in the lead, to examine the cars. When they got to the corner they found Koeppen's car against the Plymouth. Blackburn and Koeppen had some conversation, the two cars were disengaged, and Koeppen and plaintiff drove the Willys to Rodkin's restaurant and parked it. They found Blackburn in the restaurant when they went inside. Koeppen stood next to Blackburn at the bar and plaintiff next to Koeppen. There was considerable argument about the damage to Koeppen's car, Koeppen demanding payment of Blackburn, he refusing because he thought the damage was too slight to bother about. After a few minutes, Martin suggested that Koeppen call the police, and while he did so, Martin took up a position near the front door. When Koeppen returned from phoning, he stood near the front door and Martin took up a position out on the walk beside Blackburn's car. Blackburn went to the kitchen in the rear and returned with his hand under his coat. As he started to go out the front door, Koeppen tried to stop him and Blackburn pulled out a knife and held it in front of him as he started to back out the door and across the sidewalk towards his car. Koeppen called to plaintiff "Look out, he has a knife." As Blackburn backed out of the restaurant and across the walk, plaintiff grabbed Blackburn by the arms from behind and a scuffle ensued, during which the men fell down twice. During the melee, plaintiff's hand was cut by the knife.

When Koeppen reached Blackburn and Martin, Blackburn was holding the knife and his hand and arm were free. He made no attempt to use the knife.

Koeppen took the knife away from Blackburn, and some unknown man arrived and proceeded to administer a severe beating to Blackburn, knocking him down at least three times, injuring his face, eyes and clothing and necessitating his being taken to the hospital. The cut received by plaintiff extended across the palm of his right hand, the palm being cut to the bone. He was operated upon, spent ten days in the hospital, has suffered some permanent impairment of the use of the hand, due to the severing of certain nerves and tendons. His doctor bill amounted to $350, and the hospital bill was in excess of $100, which was the proof that appeared in this record.

The statute under which this suit was brought provides in part as follows:

"Every husband, wife, child, parent, guardian, employer or other person, who shall be injured, in person or property, or means of support, by any intoxicated person, or in consequence of the intoxication, habitual or otherwise, of any person, shall have a right of action in his or her own name, severally or jointly, against any person or persons who shall, by selling or giving alcoholic liquor, have caused the intoxication, in whole or in part, of such person." (Section 14, paragraph 135 of the Dram Shop Act, Ill. Rev. Stat. 1939, ch. 43, par. 135 [Jones Ill. Stats. Ann. 68.042].) The defendant contends that the plaintiff cannot recover damages in this case because the complained of intoxication of Blackburn was, as a matter of law, not the proximate cause of plaintiff's injuries. It is further suggested that the construction of the Dram Shop Act by the Supreme Court is that a plaintiff may not recover in a case brought under that act unless the intoxication was the proximate cause of the injuries complained of, and that, in order for plaintiff to recover damages from the defendant Rodkin's, Inc., he must not only prove that Rodkin's, Inc., served alcoholic liquor to Blackburn and Blackburn thereby became intoxicated,

but he must also prove that such intoxication proximately caused the injuries of which plaintiff complains. The case of *Baker & Reddick v. Summers,* 201 Ill. 52, is cited, where the Supreme Court in part said:

"The statutory liability does not rest alone upon the sale or gift of liquor, but also upon the intoxication resulting from such sale or gift, and the consequent injury. Defendants would not be liable because they sold liquor to Summers or because the jury might deem such sale the effective cause of the injury, but would be liable on account of the sale and intoxication resulting from such sale, if such intoxication was the effective cause of the injury." Further in this opinion, the court said:

"It was proved that Summers was the husband of plaintiff and that he was killed by Marcum, and there was no controversy about these matters. The questions in dispute were, whether there were sales of intoxicating liquor by defendants to Summers or Marcum, or both; whether Summers or Marcum, or both of them, became intoxicated as the result, in whole or in part, of the loquor so sold, and whether such intoxication was the effective cause of Summers' death. It was necessary for plaintiff to prove the sale of liquor, consequent intoxication, and that such intoxication caused the death of her husband. (*Brannan v. Adams,* 76 Ill. 331; *Shugart v. Egan,* 83 id. 56; *Flynn v. Fogarty,* 106 id. 263; *Meyer v. Butterbrodt,* 146 id. 131.)"

Appellant points to the facts developed from the witnesses from which it appears that Blackburn backed out of the door of defendant Rodkin's restaurant with a knife plainly visible in his hand. Plaintiff was standing on the sidewalk. Blackburn, whose back was toward plaintiff, showed no intention of assaulting plaintiff. Plaintiff seized Blackburn from behind, and a scuffle ensued in which plaintiff's hand was cut.

The plaintiff's theory is, as appears from his brief, that this is a case of direct injury inflicted by "an

intoxicated person'' and not an action for damages arising ''in consequence of'' intoxication; and urge that ever since the early case of *King v. Haley,* 86 Ill. 106, it has been settled that this section of the Dram Shop Act provides two separate and distinct causes of action—one for direct injury inflicted by an intoxicated person, and the other for such damages as may arise in consequence of intoxication. (*Whiteside v. O'Connors,* 162 Ill. App. 108; *Haw v. 1933 Grill, Inc.,* 297 Ill. App. 37.) Plaintiff further urges that it has likewise long been established that in the first type of action, where injuries result from the direct, affirmative act of an intoxicated person, the doctrine of proximate cause has no application, and cite in support of this suggestion the cases last above cited.

It does appear from the facts as established by the evidence that the defendant Rodkin's, Inc., sold liquor to Blackburn as the result of which he became intoxicated and while intoxicated cut the plaintiff's hand. It does not appear from the argument of the defendant that Rodkin's, Inc., did not sell intoxicating liquor to the plaintiff nor does defendant contend that such sales were not made in the presence of Mr. Rodkin. It appears from the authorities cited that the court could properly have refused to submit to the jury the issue of proximate cause, but it was submitted along with the issues of contributory negligence and provocation. Significantly, this was done at the request of all of the parties to this lawsuit.

The defendant has taken the position that Martin's conduct at the time was the proximate cause for these injuries, not the intoxication of Blackburn, and that it could not have been foreseen that as the probable result of the serving of the liquor to Blackburn, Martin would engage in a scuffle with him without any act of Blackburn toward the aggressor Martin. For this reason, it is urged, the alleged intoxication of Blackburn cannot be held to be the proximate result of plaintiff's

injuries. However, all of these facts as suggested by the defendant are facts for a jury and it was for the jury to determine whether Blackburn was the aggressor or Martin. Also, the jury should determine whether or not Blackburn was intoxicated and whether the intoxication was the result of the serving of liquor by Rodkin's, Inc. All these facts were to be passed upon by the jury and the jury has done so. The rather unusual suggestion is made by the defendant that defendant did not assault plaintiff, and that Blackburn, to whom defendant sold liquor, did not assault or attack plaintiff; that the plaintiff seized Blackburn and assaulted him. It appears that Blackburn didn't know plaintiff was approaching him from the rear, and it is urged that the act of plaintiff in seizing Blackburn's arms was the proximate cause. Of course, we have to consider all the facts and determine whether Blackburn was intoxicated and from the facts as they appear in this record there was liquor sold by the defendant Rodkin's, Inc. The only thing that plaintiff did was to seize Blackburn from the rear to prevent the use of the knife which Blackburn had got from the kitchen of Rodkin's, Inc., which he carried out covered up by his coat. What was the purpose of this act of Blackburn in going to the kitchen and obtaining the knife and attempting to cover it up from anyone? His purpose must have been to use this knife if the situation presented itself. Plaintiff being in back of him seized him to prevent him from doing any damage with what we might call the butcher knife. There was evidence in this record which would justify the jury in reaching the conclusion that there was no occasion for Martin to assault Blackburn and that his only purpose was to prevent him from using the knife, and that in so doing his hand was cut and the injuries sustained which were complained of.

The defendant Rodkin's, Inc., contends that the plaintiff cannot recover damages because the intoxica-

tion of Blackburn was not the proximate cause of plaintiff's injuries, and further that the evidence shows that plaintiff did not, at and immediately prior to the time he sustained the injuries complained of, exercise due care for his own safety; and that under the law, plaintiff was not entitled to recover because his injuries were provoked by him or were due to his own negligence in assaulting Blackburn. The plaintiff answers these suggestions by contending that whether Blackburn's intoxication was the proximate cause of plaintiff's injuries, whether the plaintiff was in the exercise of due care for his own safety, and whether the plaintiff provoked the assault upon him, were all questions of fact properly left to the jury's determination, and cite a number of cases on the point. Under the facts as they appear in this opinion and as we have stated, it was for the jury to pass upon these questions and we believe that under all the circumstances the jury was justified in reaching the conclusion that it did. It appears from plaintiff's brief that the judgment against defendant Rodkin's, Inc., is supported by the law and the evidence, and it is contended that any alleged irregularity in the verdicts of the jury in this case has been cured and was without prejudice to the defendant Rodkin's, Inc.

In considering this question, we have been guided by an opinion of the Appellate Court in the case of *Eimer v. Miller,* 255 Ill. App. 465, where the court said:

"It is further contended that the court erred in receiving the two separate verdicts and afterwards setting aside the verdict as to the defendant, Schumacher, and permitting the plaintiff to dismiss as to him. We think the practice followed was proper. *Bartolai v. Willett Co.,* 255 Ill. App. 630 (Abst.); *Lasley v. Crawford,* 228 Ill. App. 590; *Nordhaus v. Vandalia R. Co.,* 242 Ill. 166." This conclusion of the Appellate Court has a bearing upon the facts as they are detailed in this opinion. As hereinabove stated, the jury in

this case returned a verdict finding the defendant Blackburn guilty and assessing plaintiff's damages at the sum of $1,250, and a separate verdict finding the defendant Rodkin's Inc., guilty and assessing plaintiff's damages in the sum of $5,250. Upon receiving the verdicts from the jury, judgments were entered on the respective verdicts. Subsequently, the court on the following day, by agreement of counsel for plaintiff and defendant Blackburn, the judgment entered against Blackburn was vacated and set aside and the case dismissed as to Blackburn, to which the defendant Rodkin's Inc., duly excepted.

The defendant Rodkin's, Inc., contends that the court erred in rendering judgments on the separate verdicts of the jury against the two defendants in different amounts and that the court did not correct its error by vacating the verdict and the judgment against the defendant, Blackburn. One of the cases called to our attention is that of *Lasley v. Crawford,* 228 Ill. App. 590, where the court said:

"Counsel criticise the action of plaintiff's attorney in calling the occupants of the Rolfe automobile as plaintiff's witnesses to prove plaintiff's case as alleged against both defendants and, after verdict, dismissing the suit against the defendant Rolfe. The suggestion is made that there was collusion, or an improper understanding or agreement, between plaintiff or plaintiff's attorney and Rolfe. We fail to discover any evidence in the record warranting the suggestion. And, under the law of this State, plaintiff had the right, if she saw fit, to dismiss the suit against Rolfe after verdict and take judgment on the verdict against the remaining defendant, Crawford. (*Illinois Cent. R. Co. v. Foulks,* 191 Ill. 57, 69; *Postal Tel.-Cable Co. v. Likes,* 225 Ill. 249, 265; *Humason v. Michigan Cent. R. Co.,* 259 Ill. 462, 470.)" The defendant, however, in answer to the decisions we have quoted, contends that the amended complaint contain two counts; One against the defendant Blackburn alone for assault

and the other, Count I, against both defendants charging Blackburn with an assault and charging Rodkin's, Inc., with responsibility for that assault by reason of the sale of liquor to Blackburn causing in whole or in part his intoxication, and suggest that the separate verdicts separately assessed by the jury against Blackburn and against Rodkin's, Inc., were clearly erroneous, and cite *Wanner v. Winters,* 33 Ill. App. 149; *Pardridge v. Brady,* 7 Ill. App. 639. Defendant states that, while it is true that in cases where the independent acts of two joint tortfeasors have combined to cause the plaintiff's injury and the jury separately assesses damages against each, the error in the verdict or verdicts may be corrected by appropriate action taken before the entry of judgment, such action may not be taken after judgment, and contend that by reason of the authorities that the court erred in entering the judgment against Rodkin's, Inc. The defendant finally contends that the dram shop operator cannot be liable for more actual damages than were created by the act of an intoxicated person unless it be on the theory that the dram shop operator is guilty of some act warranting punitive or exemplary damages. However, we have examined the question as presented to this court and are of the opinion that the court in entering the judgments was justified by the law as well as the facts appearing in this record.

Further, the defendant contends that the remarks of the trial judge were of such a nature as to be prejudicial to defendant and to influence the jury in finding for the plaintiff. We have examined the remarks as they were detailed in the brief, but are unable to agree with the defendant that they were prejudicial to the defendant, being guided by the case of *Anderson v. Interstate Business Men's Accident Ass'n,* 354 Ill. 538, where the court said:

"Defendant complains that the trial judge improperly examined witnesses and made prejudicial remarks during the course of the trial. A considerable

latitude must be allowed the trial court in conducting a trial, and it is only where his conduct or remarks are such as would ordinarily create prejudice in the minds of the jury that they constitute ground for reversal. (*Featherstone v. People,* 194 Ill. 325; *Schaffner v. Massey Co.,* 270 id. 207.) There were a large number of witnesses and the testimony was voluminous. While the trial judge at times exhibited impatience, we do not think his conduct was prejudicial or detrimental to a fair trial." Further, in the case of *Department of Public Works & Buildings v. Diggins,* 374 Ill. 11, the court in part said:

"The rule is that while remarks of court made to or in the presence of the jury and having the force of an instruction or opinion on the evidence, may be ground for reversal, the trial court may properly give his reasons for ruling upon evidence and he should be accorded reasonable latitude in so doing. Not every unguarded expression of a judge stating his reason for his ruling can be treated as ground for granting a new trial. *South Park Comrs. v. Ayer,* 245 Ill. 402; *Spohr v. City of Chicago,* 206 id. 441; *Birmingham Fire Ins. Co. v. Pulver,* 126 id. 329." In examining the matters complained of, we have reached the conclusion that the trial judge was careful to avoid any expression of opinion concerning the evidence and made his ruling fairly and impartially with a view only toward the expedition of justice. Two instructions were also given to the jury, one at the request of the plaintiff and one at the request of the defendants, each of which told the jury that they should not understand by anything said during the progress of the trial by the court or by any instruction given that the court had any opinion or had expressed any opinion concerning the facts in this case. The jury were told that it was solely and exclusively for them to find and determine the facts and that they must do so from the evidence. It would appear from these instructions that the jury

were to be guided by the facts, and they must so be guided by the evidence in the record.

The plaintiff contends that the damages awarded by the jury were reasonable, considering plaintiff's pain and suffering and the permanent impairment of his right hand—he being right handed—and suggests that amount awarded clearly was not the result of passion or prejudice. It does appear from the facts that the plaintiff had received a serious injury and suffered a permanent impairment of his right hand, an injury which Dr. Graham testified could not get better and might get worse. As the result of the vicious cut he received, plaintiff must be extremely limited in the use which he can make of his hand.

We believe, therefore, that the damages awarded were fair and that the verdict of the jury did not result from passion or prejudice but only from the facts as they appear in this record. Under the circumstances, we are of the opinion that the court did not err, and, therefore, the judgment against the defendant Rodkin's, Inc. for $5,250 is affirmed.

*Judgment affirmed.*

BURKE, P. J. and KILEY, J., concur.