Jo Ann Piechalak, a Minor, by Patricia Piechalak, Her Mother and Next Friend, Plaintiff-Petitioner, v. Liberty Trucking Company, an Illinois Corporation, and Marvin C. Lembke, Defendants-Respondents.

Gen. No. 50,069.

First District, Fourth Division.

April 28, 1965.

Leo K. Wykell and Alan E. Morrill, of Chicago, for plaintiff-petitioner.

Doyle, Berdelle & Tarpey, and Jerome H. Torshen, of Chicago (Jerome H. Torshen, of counsel), for defendants-respondents.

MR. JUSTICE DRUCKER delivered the opinion of the court.

Plaintiff appeals from a verdict and judgment in favor of defendants, leave to appeal having been

granted pursuant to section 76 of the Civil Practice Act. (Ill Rev Stats 1963, c 110, § 76.)

Plaintiff contends that the verdict was contrary to the manifest weight of the evidence and that she was prejudiced by trial errors.

The accident took place between 8:45 and 8:55 p. m. on January 18, 1960, about 150 feet south of Archer Avenue on Pulaski Road in the northbound lane. The area was primarily commercial and the only structure on the southeast corner was an Oklahoma gas station.

Plaintiff, Jo Ann Piechalak, nine years old at the time of the occurrence, testified that on that evening the weather was "bad . . . windy, cold and snowing"; that she accompanied "my mother, sister (Patricia) and a man friend of my mother" to a bowling alley on Archer Avenue near Pulaski Road; that after they left the alley, while her mother and her companion were getting the car, she and her sister went to a nearby telephone booth (on the southwest corner) where "we were playing around"; that she (plaintiff) decided to get some candy. Plaintiff testified that:

> I left the telephone booth and started to cross the street. I looked both ways from the curb and started to run across the street. . . . I didn't see any vehicles coming. I started to run across the street. My sister didn't say anything to me and I don't remember turning my head back. I'm sure the front of the truck come in contact with my body.

Plaintiff's older sister (Patricia, age thirteen at the time of the accident) testified that while they were at the telephone booth "my sister then decided to go for some candy across the street"; that plaintiff "left the booth and stopped at the curb before she started to cross Pulaski. She then ran across the street."

293

She further testified that "Jo Ann looked both ways before crossing the street"; that the "weather conditions . . . were very bad and visibility was rather poor" but that "you could see 2 blocks in either direction."

Plaintiff's occurrence witness, Thomas J. Sandlin, testified:

> The lighting at the corner was very good. Visibility was pretty good. I was standing on the southwest corner of Pulaski and Archer awaiting a southbound bus and happened to be looking South. I saw these two small girls playing, kind of milling around the phone booth which is approximately 75 feet south of where I stood. The smaller one of the two ran out to the curb and stepped over the curb a couple of steps looking back over her shoulder as though she were in conversation with the other and then she started running across Pulaski Road toward the south entrance to the Oklahoma Station. As she made progress, I observed the big truck coming. When I saw the truck, the little girl was half way across the street. The truck was somewhere between the railroad track and the gas station driveway when I observed him. The truck and girl came in contact. I do not know what part of the girl was struck, but she cleared the left front wheel and fender, about the center of the cab. She went down, the truck went over her and she wound up in a slumping position on the pavement under the dolly wheels. She was a little to the left of the center of the tractor trailer, almost in the center. She was slumping in a heap, like. The driver came to an immediate stop and ran around the front end of the cab to the little girl. I noticed no other traffic around at that time.

* * * * * *

294

The truck was going about 15 to 25 miles per hour. The truck went about 10 to 15 feet after striking the little girl.

Defendant presented Stanley Boucek who testified that while on the east side of Pulaski Avenue:

I observed two little girls running in and out of the telephone booth and the traffic coming down Pulaski. I then heard loud voices from the older girl saying, "Don't go, don't go," as the little one started to run across the street. I then saw the truck coming when the girl was half the way across Pulaski.

However, he testified that he did not see the impact. Defendant's driver Marvin Lembke testified:

It was misty night with rain and snow. I had my windshield wiper going. When I crossed the tracks I slowed down. I was in second gear. I was going from 5 to 7 miles per hour. . . . I proceeded north with a view of the intersection of Archer and Pulaski. I was about 300 feet from the light when it started to change. There was no traffic around me. When I saw the light it had turned red. As I proceeded on I heard a scream and I glanced around to my left and saw the little girl upon the sidewalk screaming. And I turned around back and saw the other little girl running toward my tractor. She was over a foot or two away. At that time I applied my brakes. At that time I was going 5 miles per hour. My windshield wipers were working. My left window was part way down from habit. When I saw the girl I jammed on my brakes. I stopped in 4 to 5 feet. I didn't hear the little girl collide with the side of the truck. I stopped the truck and ran to underneath the trailer. I saw the little girl. She

was approximately between the tractor wheels and the dolly wheels.

 Plaintiff contends that the jury verdict and judgment are against the manifest weight of the evidence. In Roberts v. City of Rockford, 296 Ill App 469, 16 NE2d 568, the court, in affirming a judgment for the defendant, stated at page 472:

A frequent source of accidents arise in cases where children, in response to their childish impulses, attempt to run across a street in front of approaching traffic, when there is neither time nor space enough to enable them to cross or to enable the driver of motor vehicles to avoid running into them. The fact that such an accident occurs, should not of itself create an inference of negligence on the part of the driver, since the fact is just as consistent with the conclusion that the injury took place through the indiscretion of the child as through the negligence of the driver. In such cases to justify a recovery, there must be evidence of negligence, furnished by the testimony of eyewitnesses, or fairly deducible from the circumstances under which the accident took place. Where a driver appears to have been proceeding in his own traffic lane and in a lawful and orderly manner, he should not be held liable for injuries received by a child who suddenly runs in front of the machine so that the driver is powerless to avoid the injury. Morrison v. Flowers, 308 Ill 189, 197; Zink v. Breese Grain Co., 260 Ill App 281, 283; annotations 65 ALR p 211.

These sensible observations are even more relevant to the street and traffic conditions existing today than they were when written in 1938. And they are particularly pertinent to the case at bar because the likelihood of a child running across a street could hardly

have been anticipated in a nonresidential area at night. Applying the rule of Roberts, supra, to the instant case we find that the verdict and judgment are not contrary to the manifest weight of the evidence. Ulrich v. Rickert, 17 Ill App2d 185, 190, 149 NE2d 341.

██ Plaintiff contends that defendant counsel's trial conduct deprived her of a fair trial. She claims that the questioning of her sister on cross-examination as to how she reached the bowling alley and who accompanied her was "totally irrelevant to anything in the case . . . and create[d] an aura of prejudice." A trial court has broad discretion in controlling the scope of cross-examination; a case will be reversed only if such discretion has been clearly abused and the abuse materially affected the results of the trial. Meyer v. Williams, 15 Ill App2d 513, 517, 146 NE2d 712. We find no such clear abuse here.

██ Another alleged source of prejudice involved the cross-examination of occurrence witness Thomas J. Sandlin. On direct examination the witness testified:

> The weather condition was bad. The lighting at the corner was very good. Visibility was pretty good. . . . [The telephone booth was] approximately 75 feet south of where I stood.
>
> · · · · ·
>
> The light condition that night on the west side was not quite as good as the east side.

Defendant's counsel attempted to impeach the witness by referring to a prior statement taken by plaintiff:

> Mr. Doyle: Do you remember this question asked and making the answer?:
>
> Q. The Oklahoma Gas Station has got a big sign here, right?

A. They are pretty well lit up too, but how it was, how well it was lit south of where the truck driver is coming, I don't know. *It would be kind of hard to see some kid flying across the street like that.* (Emphasis supplied.)

Objections were made on the grounds that the evidence was incompetent and not impeaching in nature. After a colloquy outside the presence of the jury the court opined: "This hasn't prejudiced the jury" and "I think it would be a mistake to instruct the jury to disregard that." The court then ruled that the answer be reread to the witness omitting the underscored sentence. The interposition of the deleted sentence in an attempt at impeachment was inappropriate. However, the court minimized any effect it might have had on the jury and under all the circumstances of this case it was not prejudicial.

Plaintiff also urges that she was prejudiced by the repeated questioning of her, her mother and sister as to instructions which plaintiff had received at home with regard to crossing streets alone. A key issue in the instant case was the standard of care to which plaintiff was to be held. A nine year old is presumed incapable of being negligent. However, this presumption can be rebutted by a showing that a child between the ages of seven and fourteen had the mental capacity and experience to act negligently. American Nat. Bank & Trust Co. v. Pennsylvania R. Co., 52 Ill App2d 406, 424, 202 NE2d 79. Defendant's examinations, while persistently repetitious, did deal with the issue and assisted the jury in ascertaining plaintiff's mental capacity and her experience and training in crossing streets. The questioning was not prejudicial.

In the course of his closing argument defendant's counsel said:

298

But, if a child is injured through someone elses fault it is just as fair and just and honest that this youngster be paid whatever you believe is a fair amount of money for the injury that child sustained. By the same token, if she is not injured through someone elses fault it is just as fair and just and honest that this person not be required to pay for what the injuries are.

. . . . . .

But, an accident has nonetheless occurred and if this accident, ladies and gentlemen, was through no fault of Marvin Lembke is it fair to ask Marvin Lembke and his employer to pay money for the injuries that have been sustained. And if it is not fair to do that, ladies and gentlemen, then shouldn't your verdict be not guilty?

Plaintiff concludes that this line of argument resulted in "equating of payment with a verdict." Wise v. Hayunga, 30 Ill App2d 324, 174 NE2d 399, is cited for the authority that it is error to attempt to inform a jury of an absence of insurance. We hold that the comments in the instant case were not reasonably subject to the interpretation that defendant attempted to inform the jury that there was no insurance in the case.

 Plaintiff also contends that during closing argument plaintiff objected to defendant's attorney reading from a document not in evidence. The objection was immediately sustained. On appeal plaintiff argues that the document was a police report. However, the document was not identified for the jury nor does the trial record disclose its identity. Plaintiff's rights were not prejudiced. Cf. Redding v. Schroeder, 54 Ill App2d 306, 203 NE2d 616.

 Plaintiff further contends that certain statements of the trial court amounted to "judicial endorsement" of the evidence and as a result deprived

her of fair trial. The court, in ruling on an objection to the cross-examination of plaintiff's witness concerning instructions plaintiff had received at home relating to the crossing of streets, said: "She may answer. I think this has become clear at this point." Another incident occurred when in his argument to the jury plaintiff's counsel discussed inferences to be drawn from the destruction by defendant of its maintenance and report records. In ruling on an objection by defendant the judge stated: "I think it was clear from the testimony of the witnesses, they just destroyed them in the ordinary course of business." It is always hazardous for a judge in a jury trial to comment on evidence since the jury heard all the evidence and solely had the duty of evaluating it. In People v. Everist, 52 Ill App2d 73, 83, 201 NE2d 655, we noted that: "In every bitterly° fought adversary proceeding, an analytical, retrospective appraisal raises doubts about instantaneous decisions which must be made during its course." A judge must therefore have considerable latitude in conducting a trial; only where his conduct or remarks are such as would ordinarily create prejudice in the minds of the jury do they constitute reversible error. Anderson v. Inter-State Business Men's Acc. Ass'n of Des Moines, Iowa, 354 Ill 538, 550, 188 NE 844; Martin v. Blackburn, 312 Ill App 549, 561, 562, 38 NE2d 939; Reske v. Klein, 33 Ill App 2d 302, 313, 179 NE2d 415. A reviewing court does not determine whether a record is completely free of error; its function is to determine whether there was error which might prejudice the rights of a party. We hold that these comments by the judge could have had no significant effect on the ultimate conclusion in this case.

 ▆▆▆ Plaintiff claims error in the court's refusal to give her Instruction No. 1 (IPI 5.01) relating to a par-

ty's failure to produce evidence. The evidence related to the maintenance of defendant's truck prior to the time of the accident. These records were subpoenaed by plaintiff during the trial. A witness called by plaintiff testified that the 1959 records had been destroyed in 1962. The accident happened in 1960. There was no basis in this evidence for plaintiff's tendered instruction. Turner v. Seyfert, 44 Ill App2d 281, 290, 194 NE2d 529. Nevertheless, the court allowed plaintiff to comment on the unavailability of the 1959 records.

■■ Plaintiff urges that the court erred in giving defendant's Instruction No. 9 (IPI 21.02) because, while that instruction states that plaintiff has the burden of proof to show that she was in the exercise of due care, it does not make explicit that the negligence of a plaintiff must be the proximate cause of the accident to bar recovery. If the plaintiff seriously contended that she was negligent and her conduct was not the proximate cause of the accident, then plaintiff's Instruction No. 8 (IPI 20.01) * should have stated this theory. Plaintiff cannot complain of an adversary's instruction when her instruction was subject to the same criticism. Illinois Transit Lines v. Packer City Transit Lines, 9 Ill App2d 161, 168, 132

---

\* The pertinent part of the given instruction states:

The plaintiff claims that she was injured and sustained damage while exercising the care required of a minor of her years, and that the defendants were negligent in one or more of the following respects:

. . . . . .

The defendants deny that they were guilty of negligence in doing any of the things claimed by the plaintiff, and further deny that the plaintiff was in the exercise of care commensurate with her age, and further deny that the plaintiff was crossing at an intersection.

NE2d 433. Plaintiff also offered an instruction defining "proximate cause," which the court gave, but tendered no other instruction referring to "proximate cause."

We are not unmindful of the duty to protect the rights of a minor child. However, we find no reversible error in the record.

The decision of the Circuit Court is affirmed.

Affirmed.

McCORMICK, P. J. and ENGLISH, J., concur.