FLORENCE FOERSTER, Plaintiff-Appellee, *v.* ILLINOIS BELL TELEPHONE COMPANY, Defendant-Appellant.

(No. 58781;

First District (4th Division)—June 26, 1974.

L. Bow Pritchett, Edward Butts, and Richard G. Siegel, all of Chicago, for appellant.

Robert F. Meersman, of Mt. Prospect, for appellee.

Mr. PRESIDING JUSTICE ADESKO delivered the opinion of the court:

The appeal in this case arises out of injuries sustained by the plaintiff-appellee in an accident that occurred at her place of employment, The Real Estate News Co., on May 4, 1966. In a jury trial a verdict was returned against the defendant and the jury found that the defendant's negligence was the proximate cause of the plaintiff's injuries. The defendant contends that numerous errors occurred during the course of the trial and that the cumulative effect of these alleged errors was to deprive it of a fair trial. It is maintained by the defendant that the trial court erred in forcing it to present its proof out of turn so that the plaintiff's medical expert could testify when he found it convenient. The defendant also contends that the trial court erred in sua sponte interrupting defense counsel's closing argument and in refusing to give the jury certain instructions that were tendered by defendant. A final contention of the defendant is that the trial court erred in what defendant characterizes as closely monitoring and interrupting witnesses testifying for the defense. We find no merit in these contentions.

The plaintiff arrived at work on May 4, 1966, at approximately 9 A.M. and commenced her duties as a telephone solicitor for the Real Estate News Co. In one of the calls made by the plaintiff the recipient stated that he had subscribed to the magazine published by Real Estate News

and inquired if the company had received his check. The plaintiff did not have this information and said that she would have to verify it with a co-employee by the name of Tina. At approximately 10:30 or 11 A.M. the plaintiff left her desk and walked into the reception area where Tina's desk was located. At this time plaintiff noticed two men from the Illinois Bell Telephone Co. working behind Tina's desk.

The plaintiff testified that she walked about 15 feet from the entrance of the reception room to Tina's desk and that the reception room was well lighted. She was not carrying anything and did not have any trouble seeing what was ahead of her. She stated that there was nothing foreign on the reception room floor when she arrived at work in the morning and that she did not notice any cables as she walked into the room. After the plaintiff received the information she desired from Tina, she turned to walk away from Tina's desk. Plaintiff stated that telephone cables were wrapped around her foot and that she was thrown approximately 10 to 15 feet across the room. She did not fall but at this time Tina hollered "My God" and the plaintiff turned and her shoulder hit a wall. The plaintiff testified that after she got her foot free from the wires she walked back to Tina's desk and picked up a telephone that had fallen off the desk. Plaintiff then walked back to her desk and tried to compose herself. She stated that it took about an hour before she could begin working again but that she worked the remainder of the day.

The reception room walls were described by the plaintiff as beige in color and the floor was also beige. The telephone cables were beige and Tina's desk was grey. The plaintiff stated that after she tripped she noticed that large telephone cables were on the floor by Tina's desk. She described them as being ½ to 2 inches thick and that they were hooked up to the telephone on Tina's desk. She stated that it looked as if there were 1000 feet of cable on the floor.

The plaintiff sustained injuries to her left shoulder and right ankle and left her job on June 3, 1966, to receive medical attention. She was treated by various doctors and incurred various medical expenses. Plaintiff did not begin working again until October of 1967.

The defendant called as a witness Phillip Buckingham who was a private branch exchange installer for the defendant. Mr. Buckingham testified that he had 14 years experience as a P.B.X. installer and that in early May of 1966 he was at the Real Estate News Co. office installing a call director. He stated that the cable utilized for such an installation was approximately as thick as his thumb and that it was either beige or grey in color depending upon what color the subscriber selected. Buckingham testified that he was working in the area of the reception room desk but that no cable for the job was stored in the reception area.

Buckingham identified certain photographs of the reception room at Real Estate News and stated there was a typewriter, a clock, and a fan on the reception desk. The photograph also depicted an adding machine or comptometer on the desk but Buckingham could not recall if this machine was on the desk on the date in question. He was shown a piece of outside cable or inside building cable by defendant's attorney and stated that he did not use any of this type cable as a P.B.X. installer. Upon cross-examination Buckingham stated that he was installing about 45 or 50 feet of cable to the call director. He did state that he observed an accident during the time he was at the Real Estate News office.

The defendant contends the trial court abused its discretion in forcing it to put on its proof out of turn so that the plaintiff's medical expert could testify when he found it convenient. The trial in the instant controversy began on a Thursday and concluded on the following Monday. On Friday, the second day of trial, the trial court stated that it had been informed by counsel for the plaintiff that he could not go forward with his medical testimony at that time and the trial court ruled it would proceed with the medical testimony on Monday at 9:30 A.M. The court stated:

> "I am going to permit, over the objection of counsel for the defendants, for him to conclude his case on the question of liability, and request counsel for the defendant to proceed with this case on the question of liability and grant plaintiff's counsel leave to conclude his case on any medical matters on Monday morning, and also permit counsel for the defendant, if he has any rebuttal or conflicting medical testimony, to put on his medical testimony Monday morning. This is over the objection of counsel."

The defendant maintains that the trial court erred because its ruling was tantamount to ordering a split issue trial and because the plaintiff failed to show due diligence and due cause.

■■■ A split issue trial is one in which evidence on the issue of liability is heard and then the trier of fact renders a decision on that question. If there is a finding of no liability the trial terminates. However, if liability is found then either the same or another jury hears evidence on the question of damages and a verdict is rendered on that question. It was held in *Mason v. Dunn* (1972), 6 Ill.App.3d 448, 285 N.E.2d 191, that a trial court does not have the inherent authority to sever the issues of liability and damages in a single action. The trial court's ruling in the case at bar, which allowed the plaintiff to produce her medical testimony after the defendant presented its evidence on the liability issue did not constitute ordering a split issue trial. All of the evidence was heard before the jury retired to deliberate the issues of liability and

damages. There was not a separate verdict as to liability and then a consideration of the damages issue. Therefore, this was not an impermissible split issue trial.

■■ A trial court has a great deal of discretion in regards to controlling the order in which evidence is produced. As stated in *McGlaughlin v. Pickerel* (1943), 381 Ill. 574, 583, 46 N.E.2d 368, 373:

"The order of the introduction of evidence rests in the sound discretion of the trial court and the exercise of it will not be interfered with except for clear abuse. [Citations.]"

And as stated by Wigmore:

"It is obvious that, while a usual order for introducing topics of evidence and witnesses is a desirable thing, a variation from that order, which is often equally desirable, will not necessarily cause direct harm; it can do so only where it tends to confuse the jury, or where it misleads the opponent or finds him unprepared to meet it." (VI Wigmore on Evidence, § 1867.)

There is no indication in the case at bar that the jury was confused or that the defendant was misled or unprepared to meet the trial court's ruling which varied the normal order for presenting the evidence. Defendant maintains it would have been more appropriate for the trial court to recess until after the plaintiff was able to produce her medical expert. However, as stated in *Chwala v. Herbert* (1908), 138 Ill.App. 371, 372, "The conduct of trials as to permitting delay must necessarily be left to the sound discretion of trial courts. *Brewer v. N.U. Bldg. Ass'n.*, 166 Ill. 221." It is also important to note that the trial court in making its ruling did state that the defendant would be allowed to introduce any conflicting medical evidence it had after the plaintiff's medical expert testified. We are of the opinion that the trial court did not abuse its discretion in changing the normal order of proof and there was no prejudice to the defendant by the ruling.

■■ The defendant's next contention is that the trial court erred in sua sponte interrupting its defense counsel's closing argument and in sustaining objections to it by the plaintiff. Before considering each specific instance of alleged impropriety, it is first necessary to reiterate certain well established principles of law concerning closing arguments. "The purpose of a closing argument is to assist the jury in arriving at a verdict, with all facts presented fairly. Considerable latitude of expression on anything that is in evidence must be allowed counsel." (*Hopwood v. Thomas Hoist Co.* (1966), 71 Ill.App.2d 434, 443, 219 N.E.2d 76, 81.) The closing arguments of counsel must be confined to those matters that are in evidence or admitted and uncontroverted. When counsel oversteps the boundaries of proper argument, the trial judge

need not wait for opposing counsel to object but under appropriate circumstances the court can halt the improper argument. As stated in *Englund v. Mississippi Valley Traction Co.* (1908), 139 Ill.App. 572, 580, "It is the duty of the court to control counsel within reasonable bounds and to restrict the argument to the evidence in the case."

During the direct examination of the plaintiff by her attorney the following questions and answers were given:

"Q. Mrs. Foerster, was there any warning or anything by any-was there-did you receive any warning that these men were working there?

A. No. I didn't.

Q. Did anybody say anything to you to the effect to 'Look out' or anything?

A. No."

In its closing argument the defendant sought to argue to the jury that if a warning were appropriate the plaintiff's employer should have warned her and provided her a safe place to work. The trial court on its own did not permit the defense counsel to proceed with this line of argument. We are of the opinion that there was no issue in this case as to the plaintiff's employer's responsibility to warn the plaintiff and provide her with a safe place to work. The pleadings did not raise the issue and the questions and answers quoted are insufficient to raise the issue. Therefore, the trial court was correct in stopping the defendant from alluding in closing argument to a matter that went beyond the evidence in the case.

■■ The defendant maintains that the trial court erred in not permitting defense counsel to argue to the jury the plaintiff's failure to produce as a witness the receptionist, Tina. The law is that "[t]he failure of a litigant to call a witness within the control of such litigant is a proper subject of comment. [Citations.]" (*In re Estate of Sandusky* (1943), 321 Ill.App. 1, 16, 52 N.E.2d 285, 291.) However, before the defendant could comment upon the plaintiff's failure to produce Tina, the record must show that Tina was under the control of the plaintiff or not as available to the defendant. (*Bunton v. Illinois Central Railroad Co.* (1957), 15 Ill.App.2d 311, 146 N.E.2d 205; *Wofford v. DeVore* (1966), 73 Ill.App.2d 92, 218 N.E.2d 649; *Goshey v. Dunlap* (1973), 16 Ill.App.3d 29, 305 N.E.2d 648.) There was no such evidence in the record and therefore, the trial court did not err in not permitting the defendant to make this argument.

■■ The defendant also maintains that the trial court erred in sustaining objections to defense counsel's argument as to how the plaintiff had characterized the cable and when defense counsel hypothesized as to

how the plaintiff may have gotten her foot caught in the cable attached to the phone on Tina's desk. In regards to the cable defense counsel sought to argue that plaintiff had described it as a 900 paracable. Defense counsel sought to hypothesize that after the plaintiff received the information she desired from Tina, plaintiff called the man who she had previously called and then tripped over the phone. The objections in both instances were that there was no such testimony and the trial court sustained them. "It is well established that counsel's arguments are limited to the evidence presented. He cannot testify or supply new facts during the closing arguments. *Owen v. Willett Truck Leasing Corp.*, 61 Ill.App.2d 395, 209 N.E.2d 868." (*Ferrer v. Vecchione* (1968), 98 Ill.App. 2d 467, 474, 240 N.E.2d 439, 442.) A perusal of the record indicates there was no evidence upon which either of these arguments could be based. Defense counsel attempted to make statements that were not based on evidence in the record and the trial court did not err when it sustained the objections to these statements.

Defendant maintains the trial court erred in not permitting defense counsel to utilize during closing argument defense exhibits 8 and 10 for identification. These exhibits had not been admitted into evidence because defense counsel had not offered them. It was, therefore, not error for the trial court to sua sponte prevent defense counsel from using them. See *Parrucci v. Kruse* (1956), 12 Ill.App.2d 30, 138 N.E.2d 91.

■■ In the case at bar the plaintiff did not introduce into evidence any photographs of the scene of the accident. During defendant's closing argument defense counsel stated, "[I]t wasn't convenient for them to produce photographs for you." Plaintiff's counsel objected to this remark and the trial court stated, "There's no need for that type of comment, counsel." Defendant now contends the trial court's statement circumscribed the defense's argument and had a prejudicial effect. We do not agree. The defense counsel's remark was improper and the trial court's admonishment came within its duty to control closing arguments and insure that each side has a fair trial.

■■ The defendant also contends that the trial court erred when during the plaintiff's rebuttal argument and in response to an objection by defense counsel, the court characterized Mr. Buckingham's testimony in regards to what was on the receptionist's desk as "loose". This characterization was improper because as stated in *Piechalak v. Liberty Trucking Co.* (1965), 58 Ill.App.2d 289, 300, 208 N.E.2d 379, 384, "It is always hazardous for a judge in a jury trial to comment on evidence since the jury heard all the evidence and solely had the duty of evaluating it." However, the court also stated:

"A reviewing court does not determine whether a record is com-

pletely free of error; its function is to determine whether there was error which might prejudice the rights of a party. We hold that these comments by the judge could have had no significant effect on the ultimate conclusion in this case." (*Piechalak, supra,* at 300.)

Similarly, in the case at bar it was improper for the trial court to characterize the testimony of Buckingham as "loose" but this single, isolated comment could not have had any significant impact on the jury's verdict.

■■ The defendant's next contention is that the trial court erred in refusing to submit to the jury two of the instructions tendered by the defendant. One instruction stated, "The occupant of property owed the plaintiff the duty to exercise ordinary care to keep the property reasonably safe for use by the plaintiff." The other instruction in substance stated that if the jury decided that the defendant was negligent and if its negligence was the proximate cause of the injury to the plaintiff it would not be a defense that something else may also have been a cause of the injury but if the jury decided that the sole proximate cause of the plaintiff's injury was something other than the conduct of the defendant then the verdict should be for the defendant. The defendant argues that these instructions should have been given in accordance with its theory that the plaintiff's employer had a duty to provide the plaintiff with a safe place to work. It is axiomatic that a party has a right to have the jury instructed on his theory of the case but there must be an evidentiary basis for the instruction. (*Sims v. Chicago Transit Authority* (1955), 7 Ill.App.2d 21, 129 N.E.2d 23; *Wrighthouse v. Brown* (1964), 52 Ill.App.2d 191, 201 N.E.2d 752; *Berg v. Collier* (1965), 60 Ill.App.2d 145, 208 N.E.2d 353.) The record in the case at bar lacks the evidence that would have justified the defendant's instructions. As stated in *Starck v. Chicago & North Western Ry. Co.,* 4 Ill.2d 611, 620-621, 123 N.E.2d 826, 832 (1954):

"The rule requiring an employer to furnish his employees with a reasonably safe place to work imposes the 'duty only of keeping the premises physically safe and has no reference to anything else,' (*Fisher v. Chicago, Rock Island and Pacific Railway Co.,* 290 Ill. 49, 58,) and an instruction on that rule where there is no evidence tending to establish a violation of such duty is erroneous. (*Keefe v. Armour & Co.* 258 Ill. 28, 34, 35.)"

In light of the lack of evidence to support the defendant's tendered instructions the trial court did not err in refusing to give them to the jury.

The defendant's final contention is that the trial court erred in closely monitoring and interrupting the testimony of the witnesses for the defense. Defendant maintains this conduct was prejudicial because it

conveyed to the jury the trial court's disapproval or disbelief of the defense witnesses. We do not agree and are of the opinion that there was no improper conduct on the part of the trial court.

■■■ During the testimony of Mr. Buckingham, the defense counsel sought to have admitted into evidence certain photographs of the Real Estate News office. Buckingham was asked by defense counsel if he recognized the pictures and he responded that they were pictures of the office at Real Estate News. Defense counsel then asked to have the photographs admitted into evidence and the plaintiff's attorney objected on the ground of insufficient foundation. The trial court then asked Buckingham if the pictures portrayed the office as it appeared on the date of the accident and if they truly and accurately depicted the area of the office in question. The plaintiff's attorney was then permitted to cross-examine Buckingham as to the foundation and then the photographs were admitted into evidence. The defendant maintains this sequence of events was erroneous because the jury may have doubted the validity of the photographs due to the court's entry into the proceedings. The prerequisites for admitting photographs into evidence were well stated in *Kooyumjian v. Stevens* (1956), 10 Ill.App.2d 378, 388, 135 N.E.2d 146, 151:

> "In order to have a photograph admitted in evidence it is necessary that the photograph be identified by a witness as a portrayal of certain facts relevant to the issue and verified by such witness on personal knowledge as a correct representation of the facts. The witness need not be the photographer, nor need he know anything of the time or condition of the taking, but he must have personal knowledge of the scene or object in question and testify that it is correctly portrayed by the photograph. McCormick on Evidence, sec. 181; *Brownlie v. Brownlie*, 357 Ill. 117."

The trial court's questions were merely supplying the necessary foundation for admission of the photographs into evidence and should have been supplied by the defense counsel himself. It is also not improper for a trial court to allow the party opposing the admission of the photographs the right to cross-examine the witness whose testimony provides the foundation for the photographs before they are admitted into evidence. (See *People v. King* (1963), 29 Ill.2d 150, 193 N.E.2d 790.) The defendant's contention on this point is totally without merit.

The defendant also maintains the trial court erred when it interrupted the testimony of two other defense witnesses. We deem it unnecessary to relate the specifics of these two instances because in each the trial court was only seeking to determine the materiality and relevancy of the testimony the defense counsel was seeking to elicit. The principle of

law that only evidence that is material and relevant to the issues can be brought forth is well established and no citation of authority is necessary. The trial court, therefore, did not err in determining the materiality and relevancy of the testimony before allowing defense counsel to proceed.

■■■ The defendant contends that as a result of all the actions previously mentioned the trial court overstepped the boundaries of judicial propriety and did not remain neutral. We do not agree and are of the opinion that the trial court's questioning of witnesses and interrupting their testimony was warranted and proper. "While it is true the court should not convey an impression to the jury by its questions, nevertheless it has considerable latitude in questioning witnesses. (*People v. Limeberry,* 298 Ill. 355.)" (*People v. Filas* (1938), 369 Ill. 51, 55, 15 N.E.2d 496, 498.) And as stated in *People v. Trefonas* (1956), 9 Ill.2d 92, 100, 136 N.E.2d 817, 821, "The extent to which a judge may indulge in the examination of witnesses largely rests in his discretion but in its exercise he must not forget the function of a judge and assume that of an advocate." In the case at bar the trial court did not become an advocate nor did it abuse its discretion.

After a thorough review of the record and careful consideration of the issues presented by the defendant we cannot agree that error crept through the entire trial and deprived the defendant of a fair trial. We are, therefore, of the opinion that the judgment of the trial court should be affirmed.

Judgment affirmed.

BURMAN and JOHNSON, JJ., concur.