NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2022 IL App (4th) 210714-U

NO. 4-21-0714

IN THE APPELLATE COURT

FILED
October 28, 2022
Carla Bender
4th District Appellate
Court, IL

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| FRANCESCA LEE, a Minor, by Her Father and Next Friend, ROBERT LEE, | ) ) | Appeal from the Circuit Court of |
| Plaintiff-Appellant, | ) | McLean County |
| v. | ) | No. 16L118 |
| BRIAN J. WEILAND, | ) | |
| Defendant-Appellee. | ) ) ) ) | Honorable Paul G. Lawrence, Judge Presiding. |

JUSTICE DeARMOND delivered the judgment of the court.
Justices Cavanagh and Harris concurred in the judgment.

**ORDER**

¶ 1     *Held*:   The appellate court affirmed, finding defendant was entitled to judgment as a matter of law.

¶ 2         In September 2016, plaintiff, Robert Lee, filed a complaint on behalf of his minor daughter, Francesca Lee, against defendant, Brian J. Weiland, seeking damages for injuries she suffered when she was struck by defendant's vehicle while crossing a street. In February 2021, defendant filed a motion for summary judgment. Following an October 2021 hearing, the circuit court granted defendant's motion. Plaintiff appeals, arguing the court's decision was in error. We affirm.

¶ 3                                I. BACKGROUND

¶ 4        In September 2016, plaintiff filed a complaint on behalf of his daughter, Francesca Lee, in which he alleged one count of negligence against defendant. The complaint alleged that on August 14, 2015, Francesca was a pedestrian waiting to cross East Washington Street in Bloomington, Illinois, where a van was parked in the eastbound lane. As Francesca traveled across the street in a "northerly direction," she was struck by an eastbound vehicle driven by defendant "as [he] passed the stopped van." The complaint alleged defendant had a duty to Francesca to exercise ordinary care in the operation of the vehicle, "which included the duty to avoid colliding with any pedestrian upon any roadway." Plaintiff contended defendant violated that duty by committing one or more of the following acts, including violations of Illinois law: (1) failing to drive on the right side of the roadway (625 ILCS 5/11-701 (West 2014)); (2) failing to drive as nearly as practicable entirely within a single lane (625 ILCS 5/11-709(a) (West 2014)); (3) failing to reduce speed to avoid colliding with a person (625 ILCS 5/11-601(a) (West 2014)); (4) failing to sound an audible horn warning (625 ILCS 5/11-1003.1 (West 2014)); (5) failing to avoid colliding with a pedestrian (625 ILCS 5/11-1003.1 (West 2014)); (6) passing another vehicle at a time when defendant's view was obstructed (625 ILCS 5/11-705 (West 2014)); (7) failing to reduce speed while passing a vehicle; and (8) failing to "exercise enhanced care in the operation of his vehicle due to the presence of children in the vicinity." Plaintiff further alleged, as a proximate result of one or more of defendant's actions, Francesca sustained injuries to her "head, kidney, spleen, chest, knees, elbows, and other parts of her body."

¶ 5        Defendant filed a motion for summary judgment in February 2021, asserting no genuine issue of material fact existed on the element of proximate cause and he was entitled to judgment in his favor. In support of his motion, defendant attached an accompanying

memorandum of law as well as his own discovery depositions of himself along with those of plaintiff, Francesca, James Fitzpatrick, Michael Julian, David Ashbeck, Andrew King, and Kristie King.

¶ 6 In her deposition, Francesca testified she had lived on East Washington Street her whole life and regularly babysat for the Fitzpatrick family, who lived across the street in plaintiff's rental property. Although she was 12 years old at the time of the accident, Francesca knew to look both ways before crossing a street and to wait for passing traffic. Francesca further testified she always ran whenever she crossed East Washington Street.

¶ 7 On the date of the accident, plaintiff tasked Francesca with taking a garage door opener to the Fitzpatricks' residence as she was "walking out the door" to meet a friend at the Bloomington Country Club pool. Francesca testified she then "ran across the street" to deliver the opener. When she arrived at the Fitzpatricks' residence, Francesca testified she "had to go around back" because everyone was "outside in back." Francesca then walked back toward her house down a "sidewalk that leads down to the street." Her intention was to cross East Washington Street in a northeastern direction. Before entering the roadway, Francesca looked east to see if any traffic was coming. She also observed a van "parked by the side of the road to the west of where [she] was." Francesca testified the driver of the van waved at her, yet she had no recollection of the color of the van, or the ethnicity or gender of the driver. Francesca "[did not] really remember exactly" if she waited to cross the street, but she testified she saw a truck coming "down the road a little bit" and "thought [she] could get past it." Francesca testified she ran as she crossed the street, and her last clear memory before being struck by defendant's vehicle was seeing the van driver's hand waving at her.

¶ 8        In his deposition, defendant testified he was headed to Clearwater Park after work for his son's football practice at approximately 5:30 p.m. on August 14, 2015. The weather was clear and sunny, and defendant proceeded eastbound on East Washington Street at "maybe 20 miles an hour." Defendant testified East Washington Street is a bidirectional two-lane road, and he believed the speed limit was 30 miles per hour. Defendant was somewhat familiar with East Washington Street but did not drive down it frequently. He further testified there were "multiple vehicles in front of [him]." As defendant traveled down the street, he watched as a vehicle pulled over and parked along the right side of the road. He did not see anyone entering or exiting the parked vehicle. As defendant got closer, one of the vehicles ahead of him "slowed down to pull over to the right and park also." Upon seeing the second vehicle stop and park behind the vehicle that was already parked, defendant slowed down to 15 miles per hour. Defendant testified his vehicle remained completely "in the driving lane," and he had not crossed the center line as he passed the parked vehicles. "As [defendant] was continuing down the road, a girl just came flying out in the road and in front of [his] truck." Defendant recalled the girl being two or three feet from his vehicle when he first saw her in his peripheral vision and "looking at the other lane" as she ran across the street. It was "a split second, a second at the most" between the time defendant first saw the girl and impact. Although he "hit the brakes right as soon as [he] saw her," defendant collided with Francesca "on her rear left" with the "[f]ront, right passenger side" of his truck.

¶ 9        James Fitzpatrick testified he rented a house from plaintiff located at 1319 East Washington Street in Bloomington, Illinois. Prior to the date of the accident, Francesca would babysit James's children once or twice each month, and she would cross East Washington Street

- 4 -

whenever James needed her to come over. Despite being only "11 or 12" years old at the time, James believed Francesca "was a very capable and responsible young woman."

¶ 10        James further testified he hosted a party at his house on August 14, 2015. He expected to have "almost 50 people in [his] backyard" and set up tents for the event. James also "ordered an inflatable jump house for the kids that were coming to the barbecue." James then explained he or his wife texted Francesca "to get access to [plaintiff's] back garage" because he "wanted to get into that garage to just basically plug in that inflatable house." Francesca ran over to James's house, "handed [him] the keys," and "headed right back." At the time of the accident, James was on his back patio "just hosting as people were showing up." Although he "didn't see any of it," James stated the collision between defendant's vehicle and Francesca occurred in front of his house.

¶ 11        Michael Julian testified he attended the party at the Fitzpatricks' residence on August 14, 2015. Michael arrived with his wife and two children around 5:20 p.m. The party was in the backyard, and Michael parked his car "a house or two" east of the Fitzpatricks' house. According to Michael, there was enough room for vehicles to park along the eastbound lane without blocking traffic on East Washington Street. Approximately five minutes after arriving, Michael returned to his car to move it after being told, "you can't park on that side of the street." Michael first noticed Francesca standing at the Fitzpatricks' front door and "remember[ed] seeing her at the sidewalk" as he walked to his car. He also observed a van parked in the eastbound lane "west of the sidewalk." Michael "didn't actually see [Francesca] enter the roadway," but he recalled "[h]earing the sound of her getting hit."

¶ 12        Andrew King also attended the Fitzpatricks' party on August 14, 2015. Andrew arrived at the party with his wife and six children in their Ford E-350 passenger van. The weather

conditions were clear. Traffic was "not extremely busy, but there were other cars going [Andrew's] direction and *** cars coming the other direction." Prior to the accident, Andrew "pull[ed] over on East Washington to drop off [his] family," and he "stopped just short of the [Fitzpatricks'] house on the west side of the house" in the eastbound lane "because there was a car parked in front of [him]." Andrew also observed "a girl *** on the curb on the grass just in front of where [he] stopped." Andrew stated, "[S]he was immediately in front of my vehicle. There was not much space between my vehicle and *** the vehicle in front of me." He later learned the girl was Francesca. After parking his vehicle, Andrew "turned around to *** talk to [his] kids *** about getting out of the car [and] what [they] were going to do." Andrew then "turned and looked" after he noticed Francesca "running in front of [his] car, and then before [he] knew anything she was hit by the truck coming next to [him]." Andrew further testified Francesca "just ran across [the street] in between the two cars" while looking "straight ahead." Andrew denied making any gestures to Francesca or any motions with his hands. He also denied making any movement which could have been interpreted by Francesca as him waving her across the street.

¶ 13    Kristie King, Andrew's wife, testified she was seated in the front passenger's seat of their Ford E-350 passenger van at the time of the accident. Shortly after parking their vehicle, Kristie noticed a child on the sidewalk near the curb of East Washington Street. She further testified she observed the collision and believed there was nothing defendant could have done to avoid striking Francesca. Kristie stated, "[T]his young girl *** was in front of our car, did not look before crossing the street, and *** I just kept thinking, there [was] no way that person who [was] driving that vehicle could have seen her." Kristie "[did not] remember any sounds" from the collision and could not recall the truck swerving. However, Kristie testified she had a "clear

memory" of Francesca failing to look before crossing the street and continues to tell her children, "Remember Francesca, remember what happened when she didn't look before she crossed the street." Kristie denied seeing Andrew wave Francesca across the street.

¶ 14 David Ashbeck, a Bloomington police officer, testified he investigated the collision and completed an Illinois traffic crash report as well as a McLean County incident report. As part of his investigation, Ashbeck interviewed defendant and Andrew King, each giving substantially similar accounts of the incident as they had during their depositions. Ashbeck was familiar with East Washington Street as well as its traffic flow. The posted speed limit for that area was 30 miles per hour. Ashbeck further testified it would have been permissible for other vehicles to continue eastbound on East Washington Street around any vehicles parked at the location of the accident. Ashbeck ultimately did not issue any citations, saw no reason to doubt the truthfulness of the statements given to him by any of the witnesses, and requested the case be administratively closed.

¶ 15 In September 2021, plaintiff filed a response to defendant's summary judgment motion, asserting genuine material facts existed "as to whether [d]efendant breached his duty to exercise reasonable care and whether that breach was a proximate cause of the crash, as well as Francesca's degree of comparative fault." Plaintiff claimed defendant failed to maintain a proper lookout and argued "[t]he dispute as to where Francesca was standing prior to the crash, where the collision occurred within the roadway, and [d]efendant's inconsistent testimony as to where Francesca was when he first observed her should be assessed by the trier of fact." Plaintiff also asserted the jury should be allowed to decide whether defendant traveled too fast for conditions and breached his duty of care in passing the parked van within the same lane of traffic.

¶ 16 In October 2021, the circuit court conducted a hearing on defendant's motion for summary judgment. In granting defendant's motion, the court found it "clear *** this was an unavoidable collision." The court noted "the undisputed facts do show that [defendant] certainly stayed within his own lane of traffic the entire time he was driving. He was at or below the posted speed limit ranging anywhere from 15 to 30 miles per hour depending on *** which version you believe." The court also found defendant "was not put on notice of *** any special circumstances when he came down the road" and noted "[t]he party was on the side of the house, the back of the house." There was "[n]o evidence that any of those kids were present *** when this occurred. There was *** no evidence of anyone getting out of the two parked vehicles that were there on Washington Street." The court stated it was "clear that [Francesca] was directly in front of the parked van according to her and the witnesses in the van," and "the fact that the two vehicles were parked in a no parking zone *** does not impose a higher duty on the defendant." Finally, with respect to whether Andrew waved at Francesca, the court noted she "did indicate that she thought he signaled her in some fashion." However, the court determined, "her misplaced reliance on that or her misinterpretation of whatever signal that was does not excuse her from her own negligence, which is clear in this case." Ultimately, the court found, "defendant was not negligent and that the actions of the minor were the sole proximate cause of this accident."

¶ 17 This appeal followed.

¶ 18 II. ANALYSIS

¶ 19 On appeal, plaintiff challenges the circuit court's grant of summary judgment in defendant's favor. Specifically, plaintiff asserts the court erred in granting defendant's motion for summary judgment because the evidence showed a genuine issue of material fact as to

whether the collision was unavoidable. Plaintiff also claims the question of contributory negligence should be determined by a jury. In response, defendant argues summary judgment was proper as the undisputed evidence demonstrated Francesca "darted out" in front of defendant's vehicle, and plaintiff offered no competent evidence of defendant's negligence.

¶ 20         Section 2-1005(c) of the Code of Civil Procedure (Code) (735 ILCS 5/2-1005(c) (West 2020)) governs summary judgments, providing the circuit court must enter judgment where the "pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." We recognize that "[s]ummary judgment is a drastic means of disposing of litigation and 'should be allowed only when the right of the moving party is clear and free from doubt.' " *Beaman v. Freesmeyer*, 2019 IL 122654, ¶ 22, 131 N.E.3d 488 (quoting *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 43, 809 N.E.2d 1248, 1256 (2004)). " '[W]here reasonable persons could draw divergent inferences from the undisputed material facts or where there is a dispute as to a material fact, summary judgment should be denied and the issue decided by the trier of fact.' " *Beaman*, 2019 IL 122654, ¶ 22 (quoting *Espinoza v. Elgin, Joliet & Eastern Ry. Co.*, 165 Ill. 2d 107, 114, 649 N.E.2d 1323, 1326 (1995)). "With a summary judgment motion, courts construe the pleadings, depositions, admissions, and affidavits strictly against the movant and liberally in favor of the opponent." *Smith v. Hancock*, 2019 IL App (4th) 180704, ¶ 19, 133 N.E.3d 666. A circuit court's ruling on a motion for summary judgment presents a question of law, and thus we apply the *de novo* standard of review. *Brotze v. City of Carlinville*, 2021 IL App (4th) 200369, ¶ 27, 183 N.E.3d 251.

¶ 21         "A defendant in a negligence suit is entitled to summary judgment if he can demonstrate that the plaintiff has failed to establish a factual basis for one of the required

elements of a cause of action for negligence." *Smith v. Tri-R Vending*, 249 Ill. App. 3d 654, 658, 619 N.E.2d 172, 175 (1993). "To establish negligence, a plaintiff must set forth facts showing the existence of the following: '(1) a duty owed by the defendant to the plaintiff, (2) a breach of that duty, and (3) an injury proximately caused by that breach.' " *Smith*, 2019 IL App (4th) 180704, ¶ 20 (quoting *Coole v. Central Area Recycling*, 384 Ill. App. 3d 390, 396, 893 N.E.2d 303, 309 (2008)). Here, the circuit court found "defendant was not negligent and that the actions of the minor were the sole proximate cause of this accident." Addressing the issue of proximate cause, this court has stated:

> "The proximate-cause element consists of two separate requirements: cause in fact and legal cause. [Citation.] Cause in fact exists when there is a reasonable certainty that a defendant's acts caused the injury or damage. [Citation.] In deciding the aforementioned issue, courts first address whether the injury would have occurred absent the defendant's conduct. [Citation.] Additionally, when multiple factors may have combined to cause the injury, we must consider whether the defendant's conduct was a material element and a substantial factor in bringing about the injury. [Citation.] As to legal cause, we assess foreseeability and consider whether the injury is of a type that a reasonable person would see as a likely result of his conduct. [Citation.] While proximate causation generally presents a question of fact, a court may determine the lack of proximate cause as a matter of law where the facts alleged do not sufficiently demonstrate both cause

in fact and legal cause. [Citation.]" (Internal quotation marks

omitted.) *Coole*, 384 Ill. App. 3d at 397-98.

¶ 22        In response to plaintiff's complaint, defendant asserted Francesca was contributorily negligent. Section 2-1116 of the Code (735 ILCS 5/2-1116 (West 2020)) bars a plaintiff "whose contributory negligence is more than 50% of the proximate cause of the injury or damage for which recovery is sought" from recovering any damages. *Hobart v. Shin*, 185 Ill. 2d 283, 290, 705 N.E.2d 907, 910 (1998). "A plaintiff is contributorily negligent when he or she acts without the degree of care that a reasonably prudent person would have used for his or her own safety under like circumstances and that action is the proximate cause of his or her injuries." *Coole*, 384 Ill. App. 3d at 396. "The degree of care to be exercised by a minor over the age of seven is that which a reasonable careful person of the same age, capacity and experience would exercise under the same or similar circumstances." *Merca v. Rhodes*, 2011 IL App (1st) 102234, ¶ 45, 960 N.E.2d 85. "Generally, the issue of contributory negligence is a question of fact for the jury, but it does become a question of law 'when all reasonable minds would agree that the evidence and the reasonable inferences therefrom, viewed in the light most favorable to the nonmoving party, so overwhelmingly favors the movant that no contrary verdict based on that evidence could ever stand.' " *Coole*, 384 Ill. App. 3d at 396 (quoting *Basham v. Hunt*, 332 Ill. App. 3d 980, 995, 773 N.E.2d 1213, 1226 (2002)).

¶ 23        In the present case, plaintiff points to *Merca* in support of his argument. However, the circumstances presented in *Merca* are a far cry from the circumstances presented here. In *Merca*, the plaintiff, individually and as administrator of his deceased daughter's estate, appealed the circuit court's order granting summary judgment in favor of the defendant, whose vehicle struck the decedent, a 14-year-old pedestrian. *Merca*, 2011 IL App (1st) 102234, ¶ 1. Multiple

eyewitnesses were present at the scene who observed the incident as well as the decedent as she attempted to cross the street from her high school "to go to a nearby Jewel to purchase some food." *Merca*, 2011 IL App (1st) 102234, ¶¶ 10, 18. There were signs warning drivers of the crosswalk and the possible presence of children crossing at the intersection, which was not uncommon. *Merca*, 2011 IL App (1st) 102234, ¶¶ 10, 22, 24. The defendant, a schoolteacher, also testified she was aware of the high school and " 'had been down that road dozens of times.' " *Merca*, 2011 IL App (1st) 102234, ¶ 16.

¶ 24　　　　On appeal, the plaintiff alleged the evidence showed a genuine question of material fact as to whether the accident was avoidable. *Merca*, 2011 IL App (1st) 102234, ¶ 6. He further argued, "the defendant breached the duty owed by an automobile driver to pedestrians since she knew that there might be children present at the intersection at the time of the accident and she should have been driving at a slower rate of speed." *Merca*, 2011 IL App (1st) 102234, ¶ 6. In reversing the circuit court's order, the First District noted "the speed limit in the area was 40 miles per hour and many witnesses opined [the] defendant was within that speed." *Merca*, 2011 IL App (1st) 102234, ¶ 49. However, other witnesses "opined [the] defendant was driving between 40 and 45 miles per hour as she entered the intersection." *Merca*, 2011 IL App (1st) 102234, ¶ 49. The appellate court also noted the defendant's admission she was familiar with the area and considered the accident reconstruction expert's testimony "that had the defendant been driving 20 miles per hour, the decedent 'could have cleared the lane.' " *Merca*, 2011 IL App (1st) 102234, ¶¶ 49, 52. Ultimately, the First District found a genuine issue of material fact remained "as to whether the defendant was operating her motor vehicle with ordinary care based on the fact that she knew a high school was in the area, and the wide ranges of speed that the witness testimony reveals she was traveling." *Merca*, 2011 IL App (1st) 102234, ¶ 60.

¶ 25    In this case, plaintiff contends that, like *Merca*, there exists a factual dispute over defendant's speed, and a reasonable jury could conclude defendant failed to exercise the appropriate degree of care under the circumstances. However, plaintiff's assertions are conclusory as he failed to point to any evidence supporting an inference defendant could have avoided the accident had he driven slower, kept a better lookout, driven more carefully, sounded his horn, or changed lanes. Plaintiff also contends it was improper for defendant, under these circumstances, to pass the van "stopped in the driving lane in a no parking zone without changing lanes." Yet again, plaintiff fails to point to any evidence or relevant authority in support of his assertion. According to Michael Julian, there was enough room for vehicles to park along the eastbound lane without blocking traffic, and Ashbeck, who was familiar with East Washington Street, testified defendant was permitted to continue eastbound around any vehicles parked at the location of the accident. The undisputed evidence showed defendant remained completely "in the driving lane" and was proceeding at or below the posted speed limit when Francesca ran into the street and collided with his vehicle. See *Piechalak v. Liberty Trucking Co.*, 58 Ill. App. 2d 289, 296, 208 N.E.2d 379, 382-83 (1965) (quoting *Morrison v. Flowers*, 308 Ill. 189, 197, 139 N.E. 10, 13 (1923)) (" 'Where a driver appears to have been proceeding in his own traffic lane and in a lawful and orderly manner, he should not be held liable for injuries received by a child who suddenly runs in front of the machine so that the driver is powerless to avoid the injury.' "). We also note the accident here occurred outside of a marked crosswalk, as opposed to *Merca*, where there were signs warning drivers of a crosswalk as well as the possible presence of children crossing at the intersection, which was not uncommon. See *Palausky v. Landers*, 67 Ill. App. 3d 985, 987, 385 N.E.2d 751, 752 (1978) (stating a pedestrian "who is outside a crosswalk has the specific duty of yielding the right of way to oncoming traffic"); see

- 13 -

also 625 ILCS 5/11-1003(a) (West 2014). Moreover, unlike the defendant in *Merca*—who admitted she drove " 'down that road dozens of times' " and was aware of the high school near the scene of the accident—defendant did not drive down East Washington Street frequently, was only "somewhat familiar" with it, and was not put on notice of any special circumstances. In fact, there was no evidence of anyone coming or going from the Fitzpatricks' residence at the time of the accident besides Michael, who was walking toward his car, and Francesca. There also was no evidence of anyone exiting or entering the parked vehicles along the street at the time of the accident.

¶ 26        Based on the record before us, it was reasonable for the circuit court to conclude this was an "unavoidable accident," and defendant was not negligent. The differences in facts noted by plaintiff—such as Francesca's testimony that the driver of the parked van waved at her—do not alter that conclusion. On the date of the accident, James Fitzpatrick hosted a party at his residence. He expected "almost 50 people in [his] backyard" and set up tents for the event. James or his wife texted Francesca "to get access to [plaintiff's] back garage" because they "wanted to get into that garage to just basically plug in [an] inflatable house." Francesca "ran across the street" to deliver the garage door opener. Francesca knew to look both ways and to wait for passing traffic, and she always ran whenever she crossed East Washington Street. On her way home, Francesca intended to cross East Washington Street in a northeastern direction and, before entering the roadway, she looked east to see if any traffic was coming. She also observed a van "parked by the side of the road to the west of where [she] was." Francesca saw a truck coming "down the road a little bit" but "thought [she] could get past it." As defendant drove down the street, he observed a vehicle pulled over and parked along the right side of the road. As defendant got closer, one of the vehicles ahead of him "slowed down to pull over to the

right and park also." Defendant did not see anyone entering or exiting the parked vehicles, and he did not cross the center line as he passed the parked vehicles. Defendant applied the brakes as soon as he saw Francesca and had "a split second, a second at the most" between the time he first saw her and impact.

¶ 27    The only other evidence regarding how the accident occurred was the testimony of Andrew and Kristie King, the occupants of the parked van. Andrew testified, after pulling over to drop off his family, he observed Francesca "on the curb on the grass just in front of where [he] stopped" and stated, "[S]he was immediately in front of my vehicle. There was not much space between my vehicle and *** the vehicle in front of me." Andrew noticed Francesca "running in front of [his] car, and then before [he] knew anything she was hit by the truck coming next to [him]." According to Andrew, Francesca "just ran across the street in between the two cars" while looking "straight ahead." Andrew's wife, Kristie, was seated in the front passenger's seat of their van at the time of the accident. Shortly after parking their vehicle, Kristie noticed Francesca near the curb of East Washington Street and observed the collision. She also had a "clear memory" of Francesca failing to look before crossing the street and stated there was nothing defendant could have done to avoid striking Francesca. Kristie explained Francesca "was in front of our car, did not look before crossing the street, and *** I just kept thinking, there [was] no way [defendant] could have seen her."

¶ 28    After reviewing the pleadings, the witnesses' depositions, and other exhibits, and construing them strictly against the movant and liberally in favor of the opponent, we find the circuit court did not err by concluding there was no genuine issue of material fact as to defendant's negligence. Accordingly, we find the circuit court properly concluded plaintiff was

unable to establish defendant was the proximate cause of Francesca's injuries. See *Beaman*, 2019

IL 122654, ¶ 22. Thus, summary judgment in defendant's favor was proper.

¶ 29                    III. CONCLUSION

¶ 30        For the foregoing reasons, we affirm the circuit court's judgment.

¶ 31        Affirmed.