**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2025 IL App (3d) 240147-U

Order filed January 30, 2025

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2025

| | | |
|---|---|---|
| DENISE GREEN and DARRELL GREEN, as parents and next friends of D.G., a minor, | ) ) ) | Appeal from the Circuit Court of the 18th Judicial Circuit, DuPage County, Illinois, |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | Appeal No. 3-24-0147 Circuit No. 21-L-664 |
| LINDA ALDRIDGE QUERREY, | ) ) ) | Honorable Neal W. Cerne, |
| Defendant-Appellee. | ) | Judge, Presiding. |

_____

JUSTICE ANDERSON delivered the judgment of the court.
Justice Hettel and Justice Peterson concur in the judgment.

_____

**ORDER**

¶ 1       *Held*:   Trial court did not err in granting summary judgment in favor of defendant motorist where no genuine issue of material fact existed as to whether her conduct, while operating her vehicle in a school zone, was the proximate cause of 14-year-old pedestrian's injuries.

¶ 2       Plaintiffs, Denise Green and Darrell Green, as parents and next friends of D.G., a minor, filed a complaint against defendant, Linda Aldridge Querrey, seeking damages for injuries D.G. sustained when she was struck by defendant's vehicle crossing the street between her high school

and a public library. The trial court granted summary judgment in Querrey's favor. Plaintiffs appeal, claiming deposition testimony and exhibits established a genuine issue of material fact as to proximate cause that should have been decided by a jury. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4        On September 5, 2019, Querrey was driving through a school zone at Neuqua Valley High School (Neuqua Valley) to pick up her daughter. At the same time, D.G., a fourteen-year-old student at Neuqua Valley, crossed the street, running between a school bus and a sedan, and collided with Querrey's vehicle. D.G. broke her right leg and suffered lacerations to the right side of her face.

¶ 5        On June 16, 2021, the Greens filed a negligence complaint against Querrey on D.G.'s behalf. The complaint alleged that Querrey failed to operate her vehicle in a safe and reasonable manner in a school zone to avoid hitting D.G. and sought damages for her injuries.

¶ 6        Querrey moved for summary judgment, asserting that D.G.'s own negligence contributed to her injuries and that Querrey's conduct was not the proximate cause of the accident. Querry attached her deposition testimony, as well as the deposition testimony of D.G. and an occurrence witness, Carolyn Atherton, in support of her motion.

¶ 7        D.G. testified that, on the day of the accident, she stayed after school to study with some friends at the public library, which was across the street from the high school. Students had to cross Cedar Glade Drive at the intersection of 95th Street to get to the library. Around 2:30 p.m., shortly after classes ended, D.G. and her friends left campus and walked north toward 95th Street. They decided to cross Cedar Glade closer to the library, where there were no crosswalks. As she was standing in a grassy area along the curb, she looked right and saw that all the northbound cars had made it to the light at 95th Street. She then looked left so see if any cars

2

were coming out of the school parking lot. She was the first person in her group to step into the street. She could not remember if she was walking, skipping, or jogging when she started to cross Cedar Glade. The next thing she remembered was being examined by medical personnel, but she could not recall if that was at the scene of the accident or in the hospital. She testified that she never saw Querrey's car, did not remember crossing the street, and could not recall the moment of impact.

¶ 8 Querrey testified during her deposition that Cedar Glade runs north and south, with the library on the west side of the street and the high school on the east. On June 16, 2021, she was driving in the southbound lane of Cedar Glade to pick her daughter up from Neuqua Valley and had just crossed the 95th Street intersection. The library was on her right and the high school campus was on her left. She described a long line of cars and buses to her left trying to exit campus and get through the 95th Street light. There was a "steady flow of cars" in the southbound lane, and she was approximately 4 to 5 car lengths behind the car in front of her. Querrey testified that: "[A]s I progressed south, out of nowhere I—I saw her come out between the cars and the buses and by the time I saw her, I was slamming on my brakes and struck her." Querry stated that she "saw [D.G.] running at the same time [she] struck her." She immediately jumped out of her call and yelled for someone to call 9-1-1.

¶ 9 Querrey testified that she did not know students would sometimes cut between buses and cars to cross Cedar Glade. She never witnessed anyone running across the street like that before. She further testified that the speed limit was 25 miles per hour in the school zone and she was traveling "somewhere between 20 to 25" miles per hour. Querrey testified that the driver's side "front edge" of her car was damaged as well as a plastic piece on the driver's side corner of the

3

front bumper. At the end of her deposition, Querrey stated that she was listening to a work-related conference call at the time of the accident using a wireless Bluetooth earpiece.

¶ 10      In her deposition, Carolyn Atherton testified that she is a bus driver at Neuqua Valley. On the afternoon of the accident, she was driving a bus with approximately 10 to 15 students on board and was stopped in the northbound lane of traffic on Cedar Glade waiting for the light. There are two lanes of traffic on Cedar Glade, one heading north toward 95th Street and one heading south. It was bumper to bumper traffic in her lane. In front of her was a sedan and then another bus. She witnessed D.G. run between the bus and the sedan and collide with Querrey's car. Atherton testified that:

> "[D.G.] ran, and she ran so fast that I couldn't tell whether it was a young lady or one of the boys, but it was almost simultaneous. She ran and she ran into the southbound vehicle, hit the front corner panel on the driver's left-hand side and was—the impact was so severe that it threw her actually back under—well actually back in front of the sedan in front of me." *(C. 159)*

D.G.'s friends that were standing in the grassy area did not follow her across the street. Atherton testified that D.G. hit the driver's side quarter panel of Querrey's vehicle and then reiterated that "the girl ran right out [and] hit her car."

¶ 11      According to Atherton, the impact was so forceful that it threw D.G. "straight back," causing her to land in front of the sedan sitting in front of Atherton's bus. Atherton testified that: "[D.G.] was thrown up in the air actually. Her shoes, her belongings were all thrown on the hood of that car in front of me and down in front of that car." Atherton further testified that upon impact, D.G.'s "legs and everything flew up, you know, higher—you know, above her. So, I would say she was just above the hood of the vehicle." *(C. 171)* When asked what vehicle she

4

was referring to, Atherton responded, "The vehicle in front of me." She then continued, testifying that D.G.'s legs went "over her head" and D.G.'s body was "just above the hood" of the sedan in front of her. She also confirmed that most of the damage to Querrey's vehicle was on the quarter panel above the front tire.

¶ 12        Atherton testified that students frequently cross on Glade to get from the school to the library without going up to the light at 95th Street. At the time of the accident, there were no marked crosswalks where D.G. attempted to cross the street.

¶ 13        Querrey also attached photographs to the motion that were produced by the Greens during discovery, one of which depicted Querrey's vehicle after the accident. The photo of Querrey vehicle showed damage to the front quarter panel on the driver's side of the car, primarily above the tire, and some damage to the bumper below the left headlight.

¶ 14        The trial court concluded that, based on Atherton's testimony and the photograph of Querrey's vehicle, the accident was "unavoidable." Reviewing the deposition testimony, the court noted that none of the witnesses suggested that Querrey hit D.G. but instead testified that D.G. ran into the side of Querrey's car. The court concluded that there was no genuine issue of material fact as to proximate cause and granted Querrey's motion for summary judgment.

¶ 15                                    II. ANALYSIS

¶ 16         On appeal, the Greens claim that the trial court erred in granting summary judgment in favor of Querrey because the evidence demonstrated a genuine issue of material fact as to whether Querrey's conduct was the proximate cause of D.G.'s injuries.

¶ 17        Summary judgment is appropriate where the pleadings, depositions, admissions, and affidavits demonstrate there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2022). The purpose of summary

5

judgment is not to try a question of fact, but to determine whether a genuine issue of material fact exists. *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 42-43 (2004). In considering a summary judgment motion, the court must construe the pleadings, depositions, and admissions, together with any affidavits, strictly against the movant and liberally in favor of the opponent. *Smith v. Hancock*, 2019 IL App (4th) 180704, ¶ 19. A triable issue exists where material facts are in dispute or where reasonable people might draw different inferences from the undisputed facts. *Adams*, 211 Ill. 2d at 43. We review a grant of summary judgment *de novo*, which means we perform the same analysis that the trial court would perform. *Direct Auto Insurance Co. v. Beltran*, 2013 IL App (1st) 121128, ¶ 43.

¶ 18         In a negligence cause of action, the plaintiff must show that the defendant owed a duty of care to the plaintiff, that the defendant breached that duty, and that the breach proximately caused the plaintiff's injury. *Adams*, 211 Ill. 2d at 43. While the issue of duty is a question of law, issues of breach of that duty and proximate cause are usually decided by the trier of fact. *Espinoza v. Elgin, Joliet and Eastern Ry. Co.*, 165 Ill. 2d 107, 114 (1995). Determining proximate cause requires consideration of two components: cause-in-fact and legal cause. *Dayton v. Pledge*, 2019 IL App (3d) 170698, ¶ 40. Cause-in-fact exists when there is reasonable certainty that a defendant's conduct was a material element or substantial factor in causing the plaintiff's injury. *City of Chicago v. Beretta U.S.A. Corp.*, 213 Ill. 2d 351, 395 (2004). Legal cause is assessed based on foreseeability and whether the injury is of the type a reasonable person would anticipate as a likely result of her conduct. *Id.* The plaintiff must demonstrate both to succeed in a negligence claim. *Id.* 395-96. Although proximate cause is ordinarily a question of fact for the jury to decide, where the facts are undisputed and reasonable people would not differ as to the inferences to be drawn from them, proximate cause may be determined as a

matter of law. *Robinson v. Village of Sauk Valley*, 2021 IL App (1st) 200223, ¶ 29 (citing *Harrison v. Hardin County Community Unit School District No. 1*, 197 Ill. 2d 466, 476 (Harrison, J., specially concurring)); see also *First Midwest Bank v. Ottawa Regional Hospital and Healthcare Center*, 2023 IL App (3d) 220008, ¶ 28 (where only one conclusion is clearly evident, a question of fact may be decided as a matter of law).

¶ 19    Section 2-1116 of the Code of Civil Procedure (735 ILCS 5/1-101 *et seq.* (West 2022)) bars a plaintiff whose contributory negligence is more than 50% of the proximate cause of the injury from recovering damages. *Id.* § 2-1116(c). Contributory negligence is defined as "a lack of due care for one's own safety as measured by an objective reasonable person standard." *McCarthy v. Kunicki*, 355 Ill. App. 3d 957, 972 (2005). "The degree of care to be exercised by a minor over the age of seven is that which a reasonable careful person of the same age, capacity and experience would exercise under the same or similar circumstances." *Merca v. Rhodes*, 2011 IL App (1st) 102234, ¶ 45. Courts have recognized that the negligence of a minor pedestrian can break the chain of causation, even as matter of law. See *Hernandez v. Lucas*, 104 Ill. App. 3d 692, 694 (1982) (affirming verdict in favor of defendant where evidence demonstrated that defendant "did all he could do to avoid hitting the child" who ran in front of his vehicle); *Hardy v. Smith*, 61 Ill. App. 3d 441 (1978) (defendant motorist's summary judgment motion was properly granted where only reasonable inference demonstrated that thirteen-year-old child failed to look before stepping into alley and suffering injury); see also *Lee v. Weiland*, 2022 IL App (4th) 210714-U (concluding that summary judgment was appropriate and the accident was "unavoidable" where 12-year-old pedestrian ran into the street and collided with defendant's vehicle).

7

¶ 20 Here, the Greens contend that summary judgment was inappropriate because the relevant proximate cause evidence was in dispute. We disagree. The deposition testimony revealed that D.G. crossed Cedar Glade in an area that was not designated as a crosswalk. Querrey testified that she was driving within the speed limit marked for the school zone, that she could not see D.G. before D.G. crossed the street, that D.G. ran out from between cars and buses, and that she had never seen students run across the street like that before. Her testimony was corroborated by Atherton, who stated that she witnessed D.G. run into the street between a school bus and a car that were stopped in traffic. Atherton further testified that D.G. collided with the front quarter panel of Querrey's vehicle, throwing her backwards and causing her to land in the northbound lane near a sedan in front of Atherton's bus. Moreover, a photograph of Querrey's vehicle showed damage to the front side panel of Querry vehicle. See *Peach v. McGovern*, 2019 IL 123156, ¶ 38 ("Postaccident photographs, just like testimony of witnesses describing an accident, are relevant to the issue of proximate cause and injury.").

¶ 21 In sum, the undisputed evidence showed that Querry had little, if any, time to react and there was nothing she could have done to avoid colliding with D.G. Under such circumstances, a reasonable person could draw only one logical inference—that Querrey's conduct was not the proximate cause of D.G.'s injuries. See *Lee*, 2022 IL App (4th) 210714-U, ¶¶ 27-28 (trial court properly concluded plaintiff was unable to establish defendant was the proximate cause of 12-year-old pedestrian's injuries where she failed to look before crossing the street and witnesses stated there was "nothing defendant could have done" to avoid striking her).

¶ 22 Relying on *Merca*, the Greens argue that the evidence showed a genuine issue of material fact as to whether Querrey's conduct in a school zone area was the proximate cause of D.G. injuries. We are not persuaded by the Greens' reliance on *Merca*. In that case, the plaintiff

8

appealed the trial court's grant of summary judgment in favor of a defendant motorist who struck plaintiff's 14-year-old daughter as she crossed a busy intersection near a high school, causing her death. *Merca*, 2011 IL App (1st) 102234, ¶ 1. Through depositions, witnesses testified that the decedent was jogging through a crosswalk but the signal said, "Don't Walk." *Id.* ¶ 14. Some witnesses stated that defendant was traveling above the speed limit. *Id.* ¶¶ 19, 25. The defendant admitted that she struck the decedent in middle of the front bumper of her vehicle, that her vision was not obstructed, and that she knew the high school was nearby. *Id.* ¶¶ 16-17. The reviewing court found that a factual question remained "as to decedent's contributory negligence and as to whether the defendant was operating her motor vehicle with ordinary care based on the fact that she knew a high school was in the area, and the wide ranges of speed that the witness testimony reveals she was traveling." *Id.* ¶ 60.

¶ 23    In this case, unlike *Merca*, none of the evidence suggests that D.G. was exercising reasonable care by walking in a crosswalk, nor do the facts support an inference that Querrey could have avoided the accident if she had reduced her speed. Instead, the undisputed evidence demonstrates that Querry was traveling 20 to 25 miles per hour (at or below the speed limit), that D.G. "ran" between buses and vehicles that obstructed Querry's view, that D.G. did not use a crosswalk to get to the library, and that she struck the side panel of Querry's vehicle. Thus, no question of fact remains on which reasonable minds could differ.

We further reject the Greens' claim that summary judgment was inappropriate because a question of fact exists as to whether Querrey operated her car in an unreasonably safe manner by listening to a conference call. In Illinois, the violation of an applicable statute or ordinance is *prima facie* evidence of negligence. *Kalata v Anheuser-Busch Cos.*, 144 Ill.2d 425, 434 (1991). However, section 12-610(e) of the Illinois Vehicle Code (Vehicle Code) (625 ILCS 5/12-610(e)

(West 2022)) provides that "[a] person regardless of age, may not use a wireless telephone at any time while operating a motor vehicle on a roadway in a school speed zone established under Section 11-605 ***. This subsection (e) does not apply to *** (iv) a person using a wireless telephone in voice-operated mode, which may include the use of a headset." In this instance, Querrey was operating her vehicle lawfully.

¶ 24     In their reply brief, the Greens recognize that Querrey did not violate the statute and, therefore, *prima facie* evidence of negligence is lacking. Yet they claim that Querrey's use of a headset to listen to a work-related call is probative evidence of distracted driving that should have been considered by a jury. However, liability in a negligence claim must be based on evidence and not on conjecture or speculation. *Smith v. Tri-R Vending*, 249 Ill. App. 3d 654, 658 (1993). "Where a driver appears to have been proceeding in his own traffic lane and in a lawful and orderly manner, he should not be held liable for injuries received by a child who suddenly runs in front of the [vehicle] so that the driver is powerless to avoid the injury." (Internal quotations marks omitted.) *Piechalak v. Liberty Trucking Co.*, 58 Ill. App. 2d 289, 296 (1965). Here, the Greens fail to point to any witness testimony or other evidence indicated that Querrey was distracted, that her car was weaving, or that she was focused on something other than the path in front of her while driving, and our review of the record reveals none. Given that Querrey's use of a headset did not violate the Vehicle Code and the evidence fails to demonstrate that she was otherwise distracted by listening to the phone call, we cannot say that a question of fact remains as to whether she operated her vehicle safely. See *Tri-R Vending*, 249 Ill. App. 3d at 658 (defendant was entitled to summary judgment where plaintiff failed to provide evidence of defendant's negligence based on her cell phone use).

¶ 25 After reviewing the pleadings, depositions, and other exhibits, and construing them strictly against the movant and liberally in favor of the nonmovant, we conclude that there is no genuine issue of material fact as to Querrey's negligence. We therefore affirm the trial court's order granting summary judgment in her favor.

¶ 26                                          III. CONCLUSION

¶ 27 The judgment of the circuit court of DuPage County is affirmed.

¶ 28 Affirmed.